[Civ. No. 18396.   First Dist., Div. One.   Dec. 17, 1959.]

W. D. GROOM, Appellant, v. FRED HOLM et al., Respondents.

Robert L. Bostick for Appellant.

William Steinberg and Abraham Berry for Respondents.

TOBRINER, J.—Appellant prosecutes this appeal from an adverse decision in which the court found any debt of respondents owing to appellant to be barred by the statute of limitations and held respondents not to be indebted to appellant within the last four years upon an "account stated in writing," upon a "mutual, open and current account stated in writing," or upon an "open book account stated in writing." The court declared that within the four years prior to the filing of the complaint appellant had not demanded of respondents any sum upon an open, current and mutual account in writing.

The major issue in this appeal turns on whether or not appellant proved a mutual, open and current account. Appellant urges as his sole contention that "the course of dealings between the parties gave rise to a mutual open and current account"; hence, we do not discuss the pleadings which differently state the claim. A subsidiary issue involves the effect of testimony that appellant agreed to haul respondents' timber for less than the established Public Utilities Commission rates.

The facts fall into three categories: the nature of the oral agreement for hauling charges entered into by the parties; the status of the charges of trucking proffered by appellant trucker to respondents; and the effect of the so-called "advances" of respondent shipper.

The parties entered into an oral lumber-hauling agreement in March, 1953, but the evidence conflicts as to whether appellant agreed to charge less than Public Utilities Commission rates. When appellant transported lumber from respondents' mill, appellant, or his drivers, received a shipping tag from the mill which indicated the amount of the load and its destination. These shipping tags were made out in triplicate; the mill kept one copy; the customer, the second copy; appellant, the third copy. Subsequent to delivery, appellant computed the hauling charge on his copy and submitted it to respondents twice a month.

Whether or not the charges on the shipping tags indicated the agreed price remains in dispute between the parties. Respondent's office manager, Mrs. Solbeck, testified that she placed the figures on the tags for the sole purpose of paying the Public Utilities Commission taxes; that with appellant's help she computed the amounts which appellant was to receive.

In any event these amounts fell below the Public Utilities Commission rates; a number of the tags showed one figure on the front and another on the back, generally lower, which was the amount respondents actually paid. Moreover, the figures on the back of these tags were computed on so much per 1,000 feet of lumber. Such a practice violates Public Utilities Commission rules.

The factual background of the claimed advances begins in March, 1953, when respondents extended $850 to appellant so that he could get his truck repaired and commence hauling; during the subsequent period from March, 1953, to December, 1954, appellant constantly obtained advances from respondent. Fred Holm testified: ". . . Mr. Groom could not wait until payday on the first or the fifteenth. And he was constantly after Mrs. Solbeck for draws and advances between paydays. And if he drew $5,000 on the 10th day of September when . . . [Mrs. Solbeck] settled with him on the 15th day, she would pay him in full for what we owed him and take all draws into consideration. And I also find out in consulting with our office that Mr. Groom was constantly overdrawn, constantly." Mrs. Solbeck stated that such advances or draws were not loans to appellant, but payments to offset the hauling charges.

In addition to the shipping tags, appellant sometimes presented statements to respondents which were paid "on his regular rate." Appellant claims that this course of dealings resulted in respondents' becoming indebted to appellant for the year 1953 in the amount of $4,118.12 and for the year 1954 in the amount of $25,992.17. Mrs. Solbeck categorically denies any such indebtedness.

Since plaintiff filed his complaint on February 26, 1957, and since the parties entered into the agreement in March, 1953, which was performed from that date until December, 1954, the principal issue which the trial court faced was the application of the statute of limitations. After trial without a jury, the court found that it was not true that within the last four years respondents became indebted to appellant upon an open, current and mutual account in writing; that any claim of appellant against respondents was barred by the two-year statute of limitations under section 339, subdivision 1, of the Code of Civil Procedure.

To escape the statutory bar upon an oral agreement and to find refuge in the four year provision for a mutual open and current account, appellant must prove the account

remained open. Since the parties "struck a balance" here on a bimonthly basis, the "open" account terminated.

The authorities clearly call for a mutual account which is open and current. The striking of a balance by the parties closes the open account, transforming it into an account stated. The early California case of *Norton* v. *Larco* (1866), 30 Cal. 126 [89 Am.Dec. 70], puts the matter succinctly: "Where there are demands on each side, the striking of a balance converts the set-off into payment, (*Ashby* v. *James*, 11 Mees. and Welsby, 542), and from the time the balance is ascertained by the parties and is admitted to be due from the one to the other, the account is at an end, and the ascertained balance is immediately subjected to the operation of the statute, as an original and separate demand. (Angell on Lim., Chap. 14, § 8.)" (P. 130.)

The encyclopedias uniformly impose the same requirement; 1 American Jurisprudence, Accounts and Accounting, section 4, page 268, sets out a typical statement: "Until a balance is struck, a mutual account is open and current, but parties having mutual dealings may, at the option of either party, terminate the mutuality at any time, either by an actual ascertainment of the balance and a settlement thereof, by a statement of account by either party for the purpose of terminating it, or by any act plainly showing to the other party that he means no longer to deal that way." See also 1 California Jurisprudence 2d, Accounts and Accounting, section 8, page 322.

The trial court's finding that defendants were not "indebted to the plaintiff . . . upon a mutual, open and current account" impliedly held that the account was not open; the testimony of both appellant and respondents supports that finding. During the entire period of 1953 and 1954 appellant evidently twice monthly, initially on the first and fifteenth and laterally on the fifth and twentieth, submitted a statement of his hauling charges for the preceding period. Respondents concurrently paid the amount due, deducting any amounts advanced.

Appellant on direct examination stated: "Every 15 days I would present him with a statement of my hauling that I had done. . . . I would total all the tags that I had hauled for that period on a single statement and deliver that to Mr. Holm or Mrs. Solbeck." When asked whether "the amount stated on the truck tags would be paid in full" at two-week intervals, Mrs. Solbeck replied; "The amount that

Mr. Groom agreed to haul for was paid in full to Mr. Groom every time he presented his truck tags. He gave me a pink copy of that slip when he was paid. As we checked out each load, I received a copy of it and he put his copy of it in his pile which incidentally was the original." The testimony of respondent Holm quoted *supra* in this opinion in the discussion of alleged advances confirms the above statement as to bimonthly payments.

The mutual open account could hardly survive this succession of balances struck by the parties and payments of amounts claimed to be due and owing.

Appellant's contention that any "balance struck" rested upon an illegal contract and was therefore "void" overlooks the intention of the parties to reach a balance. The fact that the parties did so erroneously, without inclusion of amounts owed by one to the other, and indeed without reference to the Public Utilities Commission rates, would not vitiate the fact that they did strike the balance. And, according to the Solbeck testimony, the balance rested upon the very figure for which "Mr. Groom *agreed* to haul."

But the vice in appellant's defense on this score lies deeper. Respondent Holm argues that he did not "advance" any amounts to appellant but made payments of amounts due under Public Utilities Commission regulations. Appellant rejects this argument on the ground the parties entertained no such intent. Appellant cannot consistently argue we must now inject respondents' liability under Public Utilities Commission regulations to defeat the parties' executed intent to strike a balance. Liability for Public Utilities Commission rates cannot be cast aside when respondents would invoke it to make "advances" into payments and seized upon when appellant would use it to turn a struck balance into an open account. It belongs in neither place, or both.

An independent and alternate ground defeats appellant's plea that the account remained open. Appellant must, and does, contend that the account was not closed twice monthly; that under Public Utilities Commission regulations respondents legally owed more than they paid, and hence the account continued. Yet Highway Carriers' Tariff Number 2 issued by the Public Utilities Commission contains regulations which prohibit an open account for the length of time appellant urges here. The Collection of Charges Rule (a) requires that transportation charges be collected prior to the carrier's relinquishment of the goods; rule (b) allows a carrier to extend

credit "[u]pon taking precautions deemed by them to be sufficient to assure payment of charges." However, this rule allows a credit period of only seven days, excluding Sundays, from the time the carrier presents his bill; and rule (d) requires that a carrier present his bill within seven calendar days following delivery of the freight. Therefore an account for hauling by a common carrier could not remain open for more than 15 days.

The account which ran beyond the lawful period can no more survive the charge of illegality under the regulations of the Public Utilities Commission than the oral agreement for payment for trucking at less than Public Utilities Commission rates. Appellant's sword must be a straight one, not twisted into the necessity of proving a prohibited long-term open account. Indeed, as appellant argues as to his principal proposition, the Public Utilities Commission rate schedule, at least in legal contemplation, became " 'a part of every contract between a highway contract carrier and the shipper.' " (*Butler* v. *Bell Oil & Refining Co.* (1945), 70 Cal.App.2d 728, 730 [161 P.2d 559].) The corollary inclusion of the method of payment for such charges into the contract itself extinguishes appellant's reliance upon an "open" account. If appellant would use the Public Utilities Commission requirements as a sword, respondents may use them as a shield.

Respondents cite considerable authority for their argument that, in addition to the bimonthly closing of the account, other elements of an open, current and mutual account "are missing here." We need not discuss this position in view of the above ruling.

Appellant raises a second issue to the effect that the trial court erroneously failed to strike from the record alleged inadmissible testimony of the private agreement of the parties that the hauling charges were less than Public Utilities Commission rates. In this respect appellant properly points out that a private contract cannot circumvent Public Utilities Commission rates; a carrier may recover the difference between the rates fixed in such a contract and those set by the commission. (*Gardner* v. *Rich Mfg. Co.* (1945), 68 Cal. App.2d 725 [152 P.2d 23] ; *Butler* v. *Bell Oil & Refining Co.* (1945), 70 Cal.App.2d 728 [161 P.2d 599].) But appellant's claim, whether premised upon an express oral, mutual, open and current account or upon the contract imposed by law, falls under the bar of the statute of limitations. The first is not "open"; the second fixes a credit period of 15 days which,

again, succumbs to the statutory bar. As a consequence, testimony regarding the illegal private contract does not prejudice appellant, whose contention must fail on other, vital grounds.

We affirm the judgment.

Bray, P. J., and Foley, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.