[Civ. No. 899. Fifth Dist. Apr. 12, 1968.]

LARRY WEST, Plaintiff and Appellant, v. ROBERT C. HOLSTROM, Defendant and Appellant.

James S. Eddy for Plaintiff and Appellant.

Rust, Hoffman, Miles & Newlan, Ellis J. Horvitz and David A. Tallant for Defendant and Appellant.

GARGANO, J.—Plaintiff, Larry West, is a former partner in a partnerership known as the W & K Trucking Company. The partnership was dissolved, and upon dissolution plaintiff acquired the partnership's cause of action against defendant. In 1966 plaintiff acquired a $25,000 judgment against defendant Robert C. Holstrom in the Superior Court of Placer County. The judgment is for undercharges resulting from lumber hauling services performed for defendant by the W & K Trucking Company during the 19-month period commenc-

ing May 1962. West and Holstrom appeal from the judgment. To avoid confusion, we shall ignore the partnership and we shall refer to the parties as plaintiff and defendant.

Defendant is an experienced lumberman who has operated a sawmill for more than 20 years. In May 1962 he engaged plaintiff to haul green lumber from his sawmill. At the time plaintiff had obtained a license to operate as a radial highway common carrier. He had also obtained a schedule of the minimum tariff rates for the hauling of lumber as fixed by the Public Utilities Commission. However, during the entire period that plaintiff hauled defendant's lumber he was paid by the volume of the lumber hauled instead of the weight of the lumber as required by the minimum rates. Subsequently the Public Utilities Commission discovered that plaintiff had undercharged the defendant for hauling defendant's lumber. The commission fined plaintiff $1,000 and directed him to collect the undercharges. After defendant refused to pay the undercharges, plaintiff instituted this action in the superior court.

Defendant neither denies the undercharges during the period in question nor challenges the sufficiency of the evidence to support the $25,000 awarded by the court. However, while conceding that the decisional law is against him, he nevertheless requests us to reverse the judgment by declaring ''a rule which will permit consideration of equitable principles so as to afford appellant (defendant) and other innocent shippers protection against a subsequent suit for undercharges by a carrier who has knowingly violated P.U.C. tariff schedules.''

A law established for a public reason cannot be contravened by private agreement (Civ. Code, § 3513). Thus, it is firmly settled that a carrier has both the right and the duty to recover undercharges; recovery is essential to preserve the minimum rate structure for a vital quasi-public industry and to maintain the integrity of the orders of the Public Utilities Commission (*Hischemoeller* v. *National Ice etc. Storage Co.*, 46 Cal.2d 318 [294 P.2d 433]; *Gardner* v. *Rich Mfg. Co.*, 68 Cal.App.2d 725 [158 P.2d 23]; *Gardner* v. *Basich Bros. Constr. Co.*, 44 Cal.2d 191 [281 P.2d 521]). In fact, it has been repeatedly stated that the collection of undercharges is one of the most effective means of preserving the minimum rate schedule and of eliminating collusion between carriers and shippers (*People* ex rel. *Public Utilities Com.* v. *Ryerson*, 241 Cal.App.2d 115 [50 Cal.Rptr. 246]).

■ As the court said in *Transmix Corp.* v. *Southern Pac. Co.,* 187 Cal.App.2d 257, 265 [9 Cal.Rptr. 714] : " '. . . The reason why there must be *inflexibility* in the enforcement of the published rate *against all and every suggestion for relaxation* rests upon the practical impossibility otherwise of maintaining equality between all shippers without preferential privileges of any sort. The rate when published becomes established by law. It can be varied only by law, and not by act of the parties.' '' ■ Consequently, if defendant hopes to change this salutary public policy he must appeal to our Supreme Court, and if he does so, he should present reasons superior to those he has presented to us.

Moreover, defendant's argument subtly suggests that he was an innocent shipper. However, defendant's good faith was not placed in issue by the pleadings or the pretrial conference order. And, significantly, the trial court made no findings on this issue. The court merely found that plaintiff was *not estopped by his own conduct* from recovering the undercharges.

In any event, this is not a compelling case to apply equitable principles to protect the defendant. The defendant was an experienced businessman who had been in the sawmill business for more than 20 years and hired transportation services since 1950. He was acquainted with the existence of the Public Utilities Commission and knew that the commission controlled lumber hauling. He testified that he always paid lumber truckers by the quantity of board-feet hauled rather than by the weight of the lumber because it was not practical to weigh the lumber. Significantly, he experienced similar troubles with the Interstate Commerce Commission before he engaged the plaintiff.

We shall now direct our attention to plaintiff's cross-appeal. He contends that the evidence does not support the damages awarded and that the trial court should have allowed prejudgment interest.

■ Plaintiff presented into evidence a detailed statement of the hauling services he performed for the defendant during the 19-month period that he was engaged by defendant. This statement contains 692 entries and *inter alia* shows the board-feet of lumber hauled, the rate charged per thousand board-feet, the amount billed, the weight of the board-feet and the total amount that should have been charged under the minimum rates. Defendant only disputed one figure; he asserted the weight of the lumber was 3.4 pounds per board-foot

instead of 4.0 pounds per board-foot as plaintiff maintained. Plaintiff contends that the amount awarded by the court is contrary to every version of the evidence.

Plaintiff's contention is without substantial merit. The court applied the two-year statute of limitations (Code Civ. Proc., § 339) and restricted plaintiff's recovery of undercharges to lumber hauled on and after June 10, 1962; plaintiff's complaint was filed on June 10, 1964. According to the evidence, if the court found that the lumber weighed 3.4 pounds per board-foot (instead of 4.0 pounds per board-foot) the sum of $26,695.66 was the most that plaintiff was entitled to recover. And if a leeway of about 5 percent is allowed to take care of miscalculations and other factors (as the court was also free to do under the evidence), it is evident the court's $25,000 judgment conforms to the evidence.

Plaintiff concedes that the two-year statute of limitations is applicable. Plaintiff apparently hauled defendant's lumber under an oral agreement and the statute of limitations relating to oral agreements applies (*Pellandini* v. *Pacific Limestone Products, Inc.*, 245 Cal.App.2d 774 [54 Cal.Rptr. 290]).

Plaintiff asserts, however, that the parties "permitted a bi-monthly lag between the completion of the haul and the payment therefor" and concludes that the statute of limitations did not run on any haul performed during the 15-day period prior to June 10, 1962. According to plaintiff's testimony defendant made out hauling tickets for each hauling service performed and furnished copies of these tickets to plaintiff's drivers. Then twice each month (on the 5th and 25th) defendant furnished plaintiff with a statement summarizing all services performed by plaintiff for the preceding 15-day period. The statement was accompanied by defendant's check in payment for the services.

This contention is also without substantial merit. If plaintiff's argument is carried to its logical conclusion it would mean that plaintiff can recover undercharges under an open account which was terminated, contrary to the rule articulated in *Groom* v. *Holm,* 176 Cal.App.2d 310 [1 Cal.Rptr. 410]. In *Holm* the parties had adopted a billing procedure remarkably similar to the one employed in the instant case. The carrier attempted to invoke the four-year statute of limitations by asserting that the undercharges were due under an open account. The trial court, however, applied the two-year statute of limitations and the carrier appealed. The appellate court affirmed the trial court and held that the open

account had terminated when the plaintiff struck a balance on a bi-monthly basis even though the balance struck may have rested on an illegal contract. The court also pointed to the "Collection of Charges Rule" of the Public Utilities Commission and stated that the account on each separate hauling service could not remain open under this rule for more than 15 days.[1]

Moreover, plaintiff here cannot recover on the accounts that were stated for each bi-monthly period. An account stated is an express or implied agreement between the debtor and the creditor that a certain sum shall be accepted in discharge of the debtor's obligation. Significantly, plaintiff was paid in full for each bi-monthly account that the parties stated according to the balance that they struck.

Thus it is manifest that plaintiff's right to recover undercharges in the instant case is based on defendant's legal obligation (a so-called "implied promise") to pay the minimum rates fixed by the Public Utilities Commission which became a part of the parties' initial *oral* transportation agreement by operation of law despite their contrary understanding and notwithstanding their billing procedure (the open account) or the accounts which they stated and settled on a bi-monthly basis (*Gardner* v. *Rich Mfg. Co., supra,* 68 Cal.App.2d 725). Defendant's obligation to pay the difference between the rates agreed upon and the minimum rates prescribed by law matured at the completion of each hauling service since there was no showing that the oral transportation agreement contemplated anything else. Consequently, the statute of limitations barred defendant's obligation at the expiration of two years from the time the service was rendered as the trial court correctly concluded. ▮ As the court stated in *Pellandini* v. *Pacific Limestone Products, Inc.,* 245 Cal.App.2d 774, 779 [54 Cal.Rptr. 290]: "In undercharge cases the period of limitations depends on the nature of the contract, whether written or oral, because the liability for the charges is created by the contract, although the amount is fixed by the commission."

▮ The remaining question is whether the court erred when it refused to allow plaintiff prejudgment interest.

---

[1] Under subparagraph (b) of the "Collection of Charges Rule," which was in effect in 1962, a carrier may extend credit to the shipper up to but not exceeding seven days, excluding Sundays and holidays, from the time the carrier presents his bill.

Under subparagraph (d) the carrier must present his bill within seven calendar days following delivery of the freight.

As far as we have been able to ascertain, the regulations of the Public Utilities Commission are silent as to whether interest should be allowed in connection with the collection of undercharges. Moreover, we have not been cited, nor has our independent research uncovered, a single California decision in which this precise question was considered. However, as we have stated, defendant was obligated to pay plaintiff for hauling defendant's lumber at the minimum rate fixed by the Public Utilities Commission as soon as the service was completed. We conclude that plaintiff was entitled to interest from that date.

Civil Code section 3287 provides: ''Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.'' And in comparable situations (the collection of undercharges under the Interstate Commerce Act and Interstate Commerce Commission regulations) the federal courts have held that interest must be allowed (*Fawley Motor Lines, Inc.* v. *Cavalier Poultry Corp.*, 235 F.2d 416; *Louisiana & Arkansas Ry. Co.* v. *Export Drum Co.*, 359 F.2d 311).

Defendant argues, however, that the court correctly disallowed prejudgment interest since no liquidated claim existed prior to judgment. He relies on excerpts from *Chase* v. *National Indem. Co.*, 129 Cal.App.2d 853, 865 [278 P.2d 68], and *Conderback, Inc.* v. *Standard Oil Co.*, 239 Cal.App.2d 664, 689-690 [48 Cal.Rptr. 901]. In *Chase* the court stated: ''The reason for denying interest on claims is that where the person liable does not know what sum he owes, he cannot be in default for not paying.'' In *Conderback* the court said: ''Civil Code section 3287 provides in relevant part: 'Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, . . .' *Under this section interest cannot be awarded prior to judgment when the amount of damages cannot be ascertained except on conflicting evidence.* [Citations.] The rationale of such rule is that where a defendant does not know what amount he owes and cannot ascertain it except by accord or judicial process, he cannot be in default for not paying it. [Citations].'' (Italics added.)

The cases cited by defendant are distinguishable. In *Chase* the statement attributed to the court was made with reference to a debtor who does not know nor has no way of knowing that he owes money, or if so, in what amount. In *Conderback* the court disallowed prejudgment interest because the account was open-ended and the debtor could not know what it owed until the creditor supplied data; there was no other way for the debtor to obtain the information. However, the court reiterated the well-settled rule that prejudgment interest must be allowed when the exact sum of the indebtedness can be readily ascertained (*Courteney* v. *Standard Box Co.,* 16 Cal. App. 600 [117 P. 778]).

In the instant case defendant kept complete records on the lumber hauled by the plaintiff. He knew exactly the date and destination of each haul, the number of board-feet hauled and the amount that he had paid. Yet defendant argues that there was a conflict in the evidence on the weight of the green lumber that plaintiff hauled for defendant. Plaintiff's expert testified that the weight of the lumber was 4.0 pounds per board-foot, and defendant's expert testified to 3.4 pounds per board-foot. Defendant therefore asserts that the exact sum of his indebtedness was not readily ascertainable.

Defendant's arguments are not persuasive. The weight of green lumber per board-foot is at least as measurable as established market values. And it has been stated on numerous occasions that interest will be allowed as damages where the demand, although unliquidated, is of such a nature that the amount can be established with reasonable certainty or by reference to well-established market values (*Crabbe* v. *Mires,* 112 Cal.App.2d 456 [246 P.2d 991]; *Katz* v. *Enos,* 68 Cal. App.2d 266 [156 P.2d 461]; *Shell Chemical Corp.* v. *Owl Transfer Co.,* 173 Cal.App.2d Supp. 796 [344 P.2d 108]).

 In any event, the duty of a carrier to collect undercharges, when ordered to do so by the Public Utilities Commission, is based on salutary public policy and is one of the most effective ways of preserving the minimum rate schedule. Thus, the shipper must not be allowed to gain any advantage, including the advantage that he would gain from the free use of the carrier's money, as the result of rate cutting. And this is particularly true where, as here, the shipper is an experienced businessman who was or should have been familiar with the Public Utilities Commission rates and regulations. As the court aptly stated in *Louisiana & Arkansas Ry. Co.* v. *Export*

*Drum Co., supra*: "We believe that prejudgment interest should be allowed. In this case, a sum certain is in controversy. As the common law recognizes in analogous situations, the only way the wronged party can be made whole is to award him interest from the time he should have received the money. At the conclusion of the dispute, the parties should be in the same position regardless of whether the shipper does not pay the disputed amount, as here, and the carrier is forced to sue, or whether the shipper pays and then sues for an overcharge." (359 F.2d at p. 317.)

The judgment is affirmed and the trial court is directed to determine the prejudgment interest and add it to the principal amount of the judgment.

Conley, P. J., and Stone, J., concurred.