[Civ.No. 62808. Second Dist., Div. One. Sept. 13, 1982.]

PATRICK E. CLANCY et al., Plaintiffs and Appellants, v.
CONSOLIDATED FREIGHTWAYS et al.,
Defendants and Respondents

544

COUNSEL

Weisinger, Frederick & Associates and Merritt L. Weisinger for Plaintiffs and Appellants.

Garfield, Tepper & Ashworth and Christopher Ashworth for Defendants and Respondents.

OPINION

HANSON (Thaxton), J.—Plaintiffs Patrick E. Clancy and William Barber, dba BCW Enterprises, Inc., and David Fleischer, dba California Imports, Inc. (hereinafter referred to collectively as plaintiffs) appeal from a summary judgment in favor of defendant Consolidated Freightways, (hereinafter referred to as Consolidated).

FACTS

The record discloses the following undisputed facts:

During the summer of 1976, Clancy and Barber, who manufacture burl tables in California, contracted to ship a number of tables to Fleischer in the State of New York. On August 18, 1976, they tendered the shipment of tables to Consolidated for shipment from Pacoima, California to New York City, New York. The freight bill of lading prepared by Consolidated was signed at that time by Barber.

The plaintiffs allege that the tables were damaged in transit. On September 26, 1976, the consignee, David Fleischer, reported the damage and filed a claim in writing with Consolidated. On December 1, 1976, the claim was rejected by Consolidated.

Clancy and Barber, when discussions with Consolidated relating to settlement of the matter failed, filed this action on January 5, 1979, somewhat over two years after rejection of their claim.

Consolidated filed a motion for summary judgment on the basis that both its bill of lading and its tariff on file with the Interstate Commerce Commission (hereinafter the ICC) declare in material part that a shipper of goods must file a lawsuit within two years and one day from the time that its claim is declined by a carrier. Consolidated conceded that its

short form of the uniform bill of lading, which was used in this case, contains only a reference to its tariff and does not contain all of the terms and conditions of carriage, but alleged that the limitations period in its tariff bars the litigation.

In support of the motion for summary judgment, defendant filed the affidavit of Robert C. Stetson, vice president and general counsel of Consolidated Freightways of Delaware who alleged, in substance, as follows: that Consolidated is an ICC common carrier motor vehicle authorized as such in ICC Docket Number 42487; that pursuant to the authority it is authorized to transport general commodities between, inter alia, Pacoima, California and New York City, New York; that as general counsel the affiant is familiar with all contracts of affreightment issued by his company; that a correct copy of the terms and conditions of the straight bill of lading is attached to the affidavit which is identical to the one used for plaintiffs' shipment; that this bill of lading is attached to the affidavit which is identical to the one used for plaintiffs' shipment; that this bill of lading is part of Consolidated's tariff on file with the ICC.

Stetson further points out that paragraph 2b of the terms and conditions provides, inter alia, that: ". . . suits shall be instituted against any carrier only within two years and one day from the date when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.'' Finally he alleges that Consolidated declined plaintiffs' claim on December 1, 1976, and that the lawsuit was not filed until January 5, 1979, more than two years and one day later.

Defendant also filed the affidavit of Gerald D. Hickey, senior claims examiner for Consolidated, who in substance alleges that the company received plaintiffs' claim in writing; that he reviewed said claim in the ordinary course of business to determine whether it should be declined or honored; that plaintiffs' claim was denied on December 1, 1976, and that all records pertaining to that claim are on file and retained by the claims department.

Plaintiffs opposed the motion for summary judgment on the ground that they had no notice of the allegedly contractual statute of limitations. Plaintiffs in opposing the motion filed the declaration of William Barber wherein he alleged, in substance, that on August 18, 1976, he delivered 10 tables to Consolidated for shipping to Fleischer in New York; that he

delivered the tables as agent for B. C. W. Enterprises; that the tables were inspected and approved for shipping by an employee of Consolidated; that he was presented with a straight bill of lading, a copy of which is attached to the declaration; that he was asked how much the shipment was worth and that amount was written on the bill of lading which he signed; that there were no terms and conditions either on the front or the back of the straight bill of lading; that he never had any knowledge that there was a limit on the time to file litigation except under California statute; that he was never informed by any employee of Consolidated that there was any contractual time within which to file an action to recover for damaged property; that the terms and conditions were not posted or brought to his attention and that he could not afford to go to Washington, D.C., to research the documents on file with the ICC even if he had known such documents were on file, which he did not; and that he understood only that the agreed price would be paid for the shipping and Consolidated would take care of the shipping and the value of his shipment was limited to $3,000.

The trial court concluding that the action was without merit and that plaintiffs had presented no triable issue of fact granted Consolidated's motion for summary judgment.

## Issue

Plaintiffs contend on appeal that the trial court erred in granting summary judgment since the tariff merely becomes a contractual term of the straight bill of lading and triable issues of fact exist as to the existence of equitable defenses to enforcement such as whether the bill of lading constitutes a contract of adhesion, and whether by virtue of their lack of notice plaintiffs were entitled to the California four-year statute of limitations on a written contract.

## Discussion

 Plaintiffs contend on appeal that a triable issue of fact exists as to whether the tariff of the common carrier constitutes a contractual provision which is binding on them despite their alleged lack of notice and inability to negotiate this term of the contract. Pursuant to former Interstate Commerce Act, section 20(11) (49 U.S.C. § 20(11), now 49 U.S.C. § 11707) made applicable to motor carriers by former[1] section

---

[1] The Interstate Commerce Act was recodified in 1978, effective January 1, 1979. Since in the case at bench the old act section numbers are applicable, these will be cited for use of reference.

219 of the Interstate Commerce Act (49 U.S.C. § 319), carriers are authorized to insert into their tariffs a time limit for the institution of suits computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim, so long as the limitation period is not shorter than two years.

Robert Stetson in his affidavit in support of Consolidated's motion alleged that Consolidated has such a period of limitation in its bill of lading and its tariffs. ■ The provisions found in a carrier's tariffs, including those which limit the time in which to commence an action against the carrier, cannot be waived by the carrier since to permit waiver would be to enable the carrier to discriminate among shippers and this is prohibited by the Interstate Commerce Act (*B.A. Walterman Co. v. Pennsylvania Railroad Co.* (6th Cir. 1961) 295 F.2d 627). Former section 217(b) of the Interstate Commerce Act (49 U.S.C. § 317(b)) declares that ''no common carrier by motor vehicle shall . . . extend to any person any privileges or facilities for transportation in interstate or foreign commerce except such as are specified in its tariffs . . . .'' This is essential to secure the general public interest in adequate nondiscriminatory transportation at reasonable rates and therefore rigid adherence to the statutory scheme and uniform standards is required (*Midstate Co.* v. *Penna. R. Co.* (1943) 320 U.S. 356, 361 [88 L.Ed. 96, 101, 64 S.Ct. 128]). Therefore tariffs whose uniform application is required to protect the public interest may not be disregarded.

The cases of *Muelder* v. *Western Greyhound Lines* (1970) 8 Cal.App.3d 319 [87 Cal.Rptr. 297] and *Bauer* v. *Jackson* (1971) 15 Cal.App.3d 358 [93 Cal.Rptr. 43], which are relied on by the plaintiffs are inapposite. In these decisions it was determined that a triable issue of fact existed as to whether or not the person shipping goods, who had the contractual opportunity to choose full common carrier liability or limited liability with the lesser shipping rate, had actually and objectively had the opportunity to make such a choice. The cases point out that if there is some evidence which would indicate an absence of opportunity by the shipper to make an informed decision respecting a limitation upon the prospective recovery against the carrier, a triable issue of fact exists.

The distinction between those cases and the case at bench is the fact that in this instance the two-year and one-day limitation on bringing an action against the carrier is contained in the carrier's tariff and applies without exception to each and every shipper of goods. Since it applies as a matter of law to all shippers neither the carrier nor the shipper is presented with the opportunity to choose a different contractual period,

and the adhesion analysis is inapplicable since there is no opportunity to negotiate terms different from those set out in the carrier's tariffs which are on file with the regulatory body, in this instance the Interstate Commerce Commission. (See in this regard *West* v. *Holstrom* (1968) 261 Cal.App.2d 89, 91-93 [67 Cal.Rptr. 831].)

In its supplemental papers in support of the motion for summary judgment Consolidated supplied the court with certified copies of various pages of their tariffs on file with the ICC and certified by H. G. Homme, Jr., secretary of the ICC. These contain a partial list of the carriers participating in the tariff and the applicable pages in respect to the terms and conditions on the uniform bill of lading and section 2(b) thereof. These documents clearly support the defendant's contention that the controlling provision in this case is an item of the tariff which has general applicability.

The provision in question is controlled by federal law and the tariffs applicable to the uniform bill of lading have been held to be just and reasonable. "Pursuant to Congressional authority, the Interstate Commerce Commission has prescribed uniform bills of lading, . . . In promulgating them, the Commission has stated that it was doing so in the interest of uniformity and to prevent discriminations. [Citations omitted.] It has found that the prescribed forms are just and reasonable, [citations omitted] and that any other would be unreasonable, [citation omitted].

". . . . . . . . . . . . . . . . . . . . . . .

"Since the clauses of the uniform bill of lading govern the rights of the parties to an interstate shipment and are prescribed by Congress and the Commission in the exercise of the commerce power, they have the force of federal law . . . ." (*Illinois Steel Co.* v. *B. & O. R. Co.* (1944) 320 U.S. 508, 510-511 [88 L.Ed. 259, 263, 64 S.Ct. 322].)

In a recent decision in the federal courts an issue similar to the one presented in the case at bench was decided adversely to the plaintiffs herein (*North American Philips* v. *Emery Air Freight* (S.D.N.Y. 1977) 432 F.Supp. 519.) There North American Phillips sued Emery Air Freight to recover the value of a truckload of electric shavers which were highjacked while in the possession of the carrier. Emery, a freight forwarder whose tariffs were on file with the Civil Aeronautics Board, raised as an affirmative defense its tariff rule 120(A) providing that it could not be liable for any claim unless the action "is brought within one year after the date written notice is given to the claimant that [Emery]

has disallowed the claim in whole or in part.'' Judgment was entered in favor of Emery on the basis that the litigation was commenced more than one year after notice was given to the plaintiff. Plaintiff argued that the one-year statute of limitations did not apply, because the plaintiff received no bill of lading. The court rejected this argument with the following observation: ''This tariff provision is valid and applicable to the facts of this case. Even if the court were to accept the plaintiff's analogy to the cases under the Warsaw Convention, holding that a failure to inform the passenger of limitation of liability contained in the Convention invalidates such limitations, the limitation on the time in which suit must be commenced contained in Emery's Tariff Rule 120(A) would still be valid and the plaintiff's suit thus time barred.'' (*Id.*, at p. 524.)

■■■■ This court has recently held that due process is not violated by enforcement of a claims limitation period which is contained in a valid tariff accepted by the regulatory agency, since such provisions have the force and effect of law and form an integral part of the contract between shipper and carrier. (*Talei* v. *Pan American World Airways* (1982) 132 Cal.App.3d 904 [183 Cal.Rptr. 532].) Since the claims limitation period is procedural in nature there is no requirement that the shipper receive actual notice of this provision.

Obviously, for practical reasons not every aspect of the relationship between shipper and carrier is subject to negotiation and the prevailing concern is for uniformity of treatment of members of the shipping public. The ''contractual'' statute of limitations, whether or not it appears on the obverse side of a bill of lading or whether it is merely referred to therein and found in the tariffs of the carrier, is readily accessible and can be found in the United States Code Annotated in sufficient detail to put the shipper on notice of the existence of terms and conditions. Finally, the short form bill of lading which the plaintiffs signed contains an agreement that the shipment shall be subject to the classifications and tariffs in effect on the date of the issue of the bill of lading and all terms and conditions in the governing classification on the date of shipment.[2]

---

[2]The short form bill of lading which plaintiffs received contains the following language: ''RECEIVED, subject to the classifications and tariffs in effect on the date of the issue of this bill of lading, the property described above in apparent good order . . . . It is mutually agreed as to each carrier . . . that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions *in the governing classification on the date of the shipment.*

''Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.''

## DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Dalsimer, J., concurred.