TORCH ENERGY MARKETING,
INC., Plaintiff,

v.

PACIFIC GAS & ELECTRIC
COMPANY, Defendant and
Third–Party Plaintiff,

v.

Torch Energy Advisors, Inc.,
Third–Party Defendant.

No. CIV.A.H–01–3402.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 13, 2003.

Anne M Rodgers, Fulbright & Jaworski, Gerard G Pecht, Fulbright and Jaworski, Houston, for Torch Energy Marketing Inc, plaintiff.

Mitchell E Ayer, Thompson & Knight LLP, Rhett G Campbell, Thompson & Knight LLP, Houston, for Pacific Gas & Electric Company, defendant.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

This declaratory judgment action arose from a California Production Balancing Agreement ("CPBA") between plaintiff, Torch Energy Marketing, Inc. ("TEMI"), and defendant, Pacific Gas and Electric ("PG & E"). Under the CPBA, TEMI distributed natural gas through a pipeline PG & E owned. The contract required delivery of a specified amount of gas. Failure to deliver less than the specified amount in a given month created an imbalance. If TEMI did not act to correct the imbalance within a set period, and the accrued imbalance exceeded a set amount, PG & E would "cashout" the imbalance and TEMI would owe PG & E the cashout sum.

For a number of months, TEMI's deliveries of gas to PG & E's pipeline under the contract were insufficient and created imbalances, which TEMI failed to correct. TEMI repeatedly incurred charges under the CPBA automatic cashout provisions. PG & E, however, failed to invoice TEMI for these charges during the first three years of the contract. TEMI did not pay any of the cashout charges it incurred. PG & E eventually discovered its failure to invoice TEMI for the cashout amounts and sought payment from TEMI, although PG & E did not seek interest on the past due amounts. TEMI refused to pay.

TEMI sought a declaratory judgment that the CPBA cashout imbalance payment provisions are unenforceable because PG & E did not timely invoice TEMI for the cashout amounts. PG & E counterclaimed against TEMI for the amount PG & E claims it is owed, the accrued cashout amounts without interest. (Docket Entry No. 6). PG & E also filed a third-party claim against Torch Energy Advisors, Inc. ("TEAI") (Docket Entry No. 8), seeking to enforce the General Guarantee Agreement ("the Guarantee") between TEAI and PG & E, under which TEAI agreed to guarantee TEMI's obligations under the CPBA.

PG & E moved for partial summary judgment against TEAI, (Docket Entry No. 17), contending that, as a matter of law, TEAI is liable to PG & E under the Guarantee despite PG & E's failure to invoice TEMI. PG & E asked this court to find that the Guarantee requires TEAI to pay PG & E for the gas it supplied to keep the pipeline balanced under the CPBA with TEMI. PG & E also seeks the attorney fees it incurred in enforcing the Guarantee.

TEMI and TEAI moved for summary judgment against PG & E, (Docket Entry No. 18), arguing that the cashout provisions of the CPBA are unenforceable punitive liquidated damages under California law; that PG & E's failure timely to invoice TEMI breached the CPBA and made the cashout imbalance provisions, or, alternatively, the entire contract, unenforceable; that PG & E caused TEMI's imbalances by increasing the pressure in its pipeline and making gas deliveries more difficult; and that all the defenses available to TEMI under the CPBA are also available to TEAI under the Guarantee.

In response, PG & E filed a cross-motion for summary judgment against TEMI, asserting that undisputed facts showed its entitlement to the accrued cashout amounts under the CPBA, not including interest. (Docket Entry No. 20). PG & E agreed that the consequence of its failure to issue timely invoices for the cashout amounts is its inability to recover interest for the period TEMI had the use of the money. In an amended complaint, TEMI and TEAI added California state law claims for breach of the covenant of good faith and fair dealing; laches; and estoppel, which TEMI and TEAI argued excused payment of the cashout amounts. (Docket Entry No. 31). TEMI and TEAI also argued that PG & E's failure to send invoices created a course of performance that modified the terms of the original contract.

In its Memorandum and Opinion of March 31, 2003, (Docket Entry No. 66), this court held that TEAI was entitled to assert the defenses to payment available to TEMI; that PG & E had not waived its right to recover cashout amounts by failing timely to invoice those amounts; that PG & E's failure timely to invoice the cashout amounts was not a material breach of the CPBA that excused TEMI's performance; that PG & E did not breach the covenant of good faith and fair dealing; that PG & E's course of dealing had not modified the contract so as to allow TEMI volumetrically to balance over time; that PG & E's recovery was not barred by the doctrine of laches; and that fact issues remained precluding summary judgment on TEMI's equitable estoppel defense to payment of the cashout amounts.

PG & E has moved for reconsideration of this court's denial of summary judgment of TEMI's equitable estoppel claim. PG & E contends that under California law, the defense of equitable estoppel is unavailable in this case. TEMI has moved for reconsideration of this court's rulings that PG & E did not modify the CPBA through its course of dealing and that the failure time-

ly to invoice cashouts was not a material breach of the CPBA.

Based on the motions and responses; the record; and the applicable law, this court GRANTS PG & E's motion for reconsideration and DENIES TEMI's motion for reconsideration. The reasons are explained below.

## I. PG & E's Motion for Reconsideration

PG & E contends that under California law, the affirmative defense of equitable estoppel is not available in disputes involving utility rates approved by the California Public Utility Commission ("CPUC"). TEMI responds that it is not challenging PG & E's filed rates, but rather PG & E's failure timely to invoice cashouts.

■ California law applies to this case. This court's *Erie* role is to apply existing California law. *United Parcel Serv., Inc. v. Weben Indus., Inc.*, 794 F.2d 1005, 1008 (5th Cir.1986). The California Supreme Court has not addressed whether the defense of equitable estoppel is available in cases in which a utility fails to invoice charges. "When making an Erie-guess in the absence of explicit guidance from the state courts, [this court] must attempt to predict state law, not to create or modify it." *Assoc. Inter. Ins. Co. v. Blythe*, 286 F.3d 780, 783 (5th Cir.2002) (citation omitted). The court "must do that which [it] thinks the [California] Supreme Court would deem best." *Morin v. Moore*, 309 F.3d 316, 324 (5th Cir.2002) (citation omitted). This court's *Erie* duty leads it to consider California appellate court case law to predict what the California Supreme Court would likely rule if confronted with the issue. *Id.*

California Public Utility Code § 532 provides:

Except as in this article otherwise provided, no public utility shall charge, or receive a different compensation for any product or commodity furnished or to be furnished, or for any service rendered or to be rendered, than the rates, tolls, rentals, and charges applicable thereto as specified in its schedules on file and in effect at the time, … nor shall any such public utility refund or remit, directly or indirectly, in any manner or by any device, any portion of the rates, tolls, rentals, and charges so specified, nor extend to any corporation or person any form of contract or agreement or any rule or regulation or any facility or privilege except such as are regularly and uniformly extended to all corporations and persons.

■ Under section 532, "[a] public utility 'cannot by contract, conduct, estoppel, waiver, directly or indirectly increase or decrease the rate as published in the tariff ….'" *Empire West v. S. California Gas Co.* 12 Cal.3d 805, 117 Cal.Rptr. 423, 528 P.2d 31, 33 (Cal.1974) (quoting *Transmix Corp. v. S. Pac. Co.*, 187 Cal.App.2d 257, 264, 9 Cal.Rptr. 714 (Cal.Ct.App. 1960)). Scheduled rates must be inflexibly enforced to maintain equality for all customers and to prevent collusion, which otherwise might be easily and effectively disguised. *Id.* "[A]s a general rule, utility customers cannot recover damages which are tantamount to a preferential rate reduction even though the utility may have intentionally misquoted the applicable rate." *Id.*

California Public Utility Code § 2106 provides:

Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or

any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom.

An award of damages under section 2106 is barred by California Public Utility Code § 1759 if it would "have the effect of undermining a general supervisory or regulatory policy of the [CPUC], i.e. when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy." *San Diego Gas & Elec. Co. v. Superior Court of Orange County,* 13 Cal.4th 893, 55 Cal. Rptr.2d 724, 920 P.2d 669, 683 (1996) (citations omitted).[1]

■ California law does not permit discounts or rebates of approved rates. *South Tahoe Gas Co. v. Hofmann Land Improvement Co.,* 25 Cal.App.3d 750, 760–61, 102 Cal.Rptr. 286 (Cal.Ct.App.1972). "The collection of undercharges ... has been held to be one of the most effective means of preserving the minimum rate structure and of eliminating collusion between carriers and shippers" and "to maintain the integrity of the order of [the] Public Utilities Commission." *Id.* (citing *People v. Ryerson,* 241 Cal.App.2d 115, 120, 50 Cal.Rptr. 246 (Cal.Ct.App.1966); *West v. Holstrom,* 261 Cal.App.2d 89, 97, 67 Cal.Rptr. 831 (Cal.Ct.App.1968)). The *South Tahoe* court stated that a customer cannot defeat recovery of an undercharge, discount, or rebate by claiming that the contract was illegal. *South Tahoe,* 25 Cal. App.3d at 761, 102 Cal.Rptr. 286.

In this case, PG & E essentially undercharged TEMI when it failed timely to invoice the cashout amounts as they accrued. TEMI now seeks to avoid the cashout charges that resulted from TEMI's failure to balance its accounts on PG & E's pipeline. The cashout provisions are part of the CPBA, which the CPUC approved. TEMI acknowledges that it owes PG & E the market cost of the gas TEMI sold in those months in which it underdelivered. TEMI only seeks to avoid paying the cashout rate of 150% of that cost.[2] To allow TEMI to avoid paying the accrued charges would effectively reduce the cashout rate the CPBA provides. The result would be a rate reduction, barred by section 532 and the strong California policy against discounts and rebates in regulated utilities.

The courts of several states have held that "where a statute requires a public utility to charge similarly situated customers according to a standard rate schedule, it contravenes public policy to preclude a public utility from collecting the full amount due for its services, even where the public utility has negligently underbilled its customer." *Cincinnati Gas & Elec. Co. v. Joseph Chevrolet,* 153 Ohio App.3d 95, 791 N.E.2d 1016, 1022 (2003); *see also Memphis Light, Gas & Water Div. v. Auburndale Sch. Sys.,* 705 S.W.2d 652 (Tenn.1986)(customer negligently un-

---

1. Section 1759 provides: "No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court."

2. "This lawsuit is about penalty charges.... TEMI has always made it clear that it is willing to pay PG & E market price for the underdelivered gas.... TEMI initiated this lawsuit specifically seeking a declaration that PG & E is not entitled to a *penalty* price for the underdelivered gas...." (Docket Entry No. 54 (TEMI's Reply to PG & E's Response to the Supplement to TEMI's Motion and TEAI's Cross–Motion for Summary Judgment), p. 1)(emphasis in original).

derbilled for years could not assert equitable estoppel as defense to payment); *Goddard v. Pub. Serv. Co. of Colorado,* 43 Colo.App. 77, 599 P.2d 278 (1979)(apartment owners who set rent based on gas bills that were too low unable to assert estoppel claim against gas company under public utility law disallowing rebates or refunds of utility charges); *Chesapeake & Potomac Tel. Co. of Virginia v. Bles,* 218 Va. 1010, 243 S.E.2d 473 (1978)(under statute similarly worded to section 523, utility customer could not assert equitable estoppel defense to payment of undercharges). These states, like California, have strong public policies supporting a utility's recovery of undercharges to maintain the fairness of the regulated rate system, precluding the assertion of equitable defenses to recovery.

TEMI contends that it does not dispute the CPBA's cashout rates, but rather the manner in which PG & E billed TEMI. TEMI relies on *Empire West* and *Cundiff v. GTE California, Inc.,* 101 Cal.App.4th 1395, 1405, 125 Cal.Rptr.2d 445 (Cal.Ct. App.2002) to support the argument that it may assert equitable estoppel as a defense to payment on the basis that PG & E's billing error caused TEMI unknowingly to continue to accrue the cashout charges. *Empire West* and *Cundiff* are distinguishable from this case.

In *Empire West,* the plaintiff, an apartment complex developer, received an estimate of the cost of a central gas heating and cooling system for a planned apartment complex from the defendant gas company. Defendant underestimated the yearly operating cost of the gas system. Plaintiff alleged that the defendant knew its estimate was based on inaccurate data and had fraudulently induced plaintiff to purchase the central gas system. Plaintiff contended that it would have installed an electric heating and cooling unit had defendant accurately estimated the cost of a gas system. The court held that plaintiff did not seek preferential rate treatment and could proceed on its fraudulent inducement claim. *Empire West,* 117 Cal.Rptr. 423, 528 P.2d at 33–34 ("we think that a utility customer who has actually been damaged by a utility's fraudulent misrepresentations regarding matters not contained in the published tariffs should be entitled to bring suit to recover those actual damages.").

The plaintiff in *Empire West* alleged damages from misrepresentations about the quantity of gas an apartment complex would consume, that induced plaintiff to install a gas heating and cooling system rather than an electric system. By contrast, PG & E did not make misrepresentations about future costs to induce TEMI to use its system. The *Empire West* court cited a CPUC decision holding that a utility's fraudulent statement to a prospective customer to induce business is actionable in a court of law. *Empire West,* 117 Cal. Rptr. 423, 528 P.2d at 34–35 and n. 4 ("As the commission explains, it is clear that ordinary rules permitting the limitation of liability do not apply to situations involving fraud or wilful misconduct."). TEMI does not allege that PG & E committed fraud or wilful misconduct by failing timely to send cashout invoices. TEMI does not seek damages other than the monthly cashout charges it admittedly accrued, but for which it was not invoiced. TEMI is challenging the 150% rate applied to uncorrected imbalances. Challenges to rates and to charges incurred but not billed through the utility's mistake do not fall under *Empire West.*

TEMI also relies on *Cundiff* to support its equitable estoppel claim. In that case, the plaintiffs received a monthly bill from the defendant telephone company containing a charge for "equipment rental." The

bills did not explain that the "equipment rental" charge included outdated and no longer used rotary telephones.[3] Plaintiffs argued that the vague characterization of the phone rental charges as "equipment rental" deceived them into believing that the charges covered equipment still in use. The court found that the plaintiffs' action was permitted under section 2106 and not barred by section 1759. The court stated:

> Assuming *arguendo* that the *amount* of money defendants charged each month as rent for telephones, we do not perceive the thrust of plaintiffs' complaint to be a challenge to that amount. Nor do we perceive this as a suit challenging the commission's decision to allow defendants to rent telephones to their customers. Rather, plaintiffs are challenging the *manner* in which defendants billed them for rental of telephones, specifically, the alleged lack of information given to plaintiffs about the rental charge. The gist of this suit is the alleged deception, intentional or negligent, resulting in plaintiffs' unknowingly paying rent month after month, year after year for telephones they do not use, whose value is less than the cumulative rent plaintiffs paid to them.

*Cundiff,* 101 Cal.App.4th at 1406–07, 125 Cal.Rptr.2d 445 (emphasis in original). TEMI argues that it is only challenging PG & E's manner of billing and not the CPUC-approved cashout rates. TEMI contends that "th[is] suit actually furthers policies of the commission because it seeks to force defendants to bill their customers in such a way that the customers are fully informed of the nature of defendants' charges." *Id.* at 1408, 125 Cal.Rptr.2d 445. TEMI's characterization of its suit is inconsistent with its statement that it is willing to pay market price for gas it nominated into the PG & E pipeline but did not deliver and "simply disputes PG & E's right to impose penalties on TEMI when PG & E did not timely invoice TEMI." (Docket Entry No. 54, p. 4; Carthrae Aff. at ¶ 12). Moreover, unlike the telephone company in *Cundiff,* PG & E provided TEMI with other information about TEMI's account status. Despite the absence of timely invoices, the record shows that PG & E provided other information that TEMI could have used to learn of the need to make adjustments to avoid cashouts. This case involves failure to bill, resulting in undercharges, rather than deceptive billing; California courts consistently and expressly support the collection of undercharges resulting from the utility's mistaken failure to send bills. "The duty of a carrier to collect undercharges, when ordered to do so by the Public Utilities Commission, is based on salutary public policy and is one of the most effective ways of preserving the minimum rate schedule." *West,* 261 Cal.App.2d at 97, 67 Cal.Rptr. 831.

TEMI argues that its equitable estoppel claim is supported by California Public Utilities Code § 453, which provides:

> (a) No public utility shall, as to rates, charges, services, facilities, or in any other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage.
>
> . . .

---

**3.** Before the telephone industry was deregulated in 1984, customers were required to rent their telephones from the telephone company. After 1984, telephone customers were able to purchase telephones from vendors other than their telephone service provider. Several telephone companies eliminated their telephone rental programs, but defendant continued to rent telephones. *Cundiff,* 101 Cal.App.4th at 1401–02, 125 Cal.Rptr.2d 445.

(e) The [CPUC] may determine any question of fact under this section.

TEMI argues that PG & E subjected it to prejudice and disadvantage by failing timely to invoice the cashout amounts. TEMI cites an Iowa case, *Interstate Power Co. v. Waukon Manor, Inc.*, 447 N.W.2d 574 (Iowa Ct.App.1989). The Iowa court held that statutory language similar to sections 523 and 453 allowed a plaintiff to defend against backbilling by a utility that had inaccurately calculated the plaintiff's bill.[4]

 No cases from California or other jurisdictions cite *Interstate Power* to support an estoppel defense to accrued charges resulting from a utility's failure to bill. "Although couched in general terms of 'any' prejudice or disadvantage [section 453(a)], from the outset, has been interpreted, consistent with traditional common law, principles, to prohibit only unjust or unreasonable differential treatment." *Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.*, 24 Cal.3d 458, 156 Cal.Rptr. 14, 595 P.2d 592, 603 (1979). "Unless discrimination in some form is present, section 453, subsection (a), simply does not apply." *Andersen v. Pac. Bell*, 204 Cal.App.3d 277, 285, 251 Cal.Rptr. 66 (1988).[5] PG & E admits that it made an error by failing timely to in-

voice TEMI for cashout amounts. This court's "*Erie* guess" is that the California Supreme Court would not treat PG & E's admittedly inadvertent error as "discrimination" under section 453(a). PG & E did not engage in rate discrimination or hiring discrimination. *Cf. United States Steel Corp. v. Pub. Util. Comm'n*, 29 Cal.3d 603, 175 Cal.Rptr. 169, 629 P.2d 1381 (1981) (rate discrimination between different localities violates section 453); *Gay Law Students Ass'n*, 24 Cal.3d 458, 156 Cal. Rptr. 14, 595 P.2d 592 (hiring discrimination against homosexuals violates section 453). PG & E did not intentionally fail to invoice TEMI for cashouts. TEMI does not allege that PG & E had a policy of favoring some customers over others. The remedy TEMI seeks, a declaration that PG & E is not entitled to enforce the "penalty" cashout provision, itself discriminates in favor of TEMI, in violation of section 523, by allowing TEMI to avoid cashout rates applicable to other gas distributors who accrued similar imbalances. TEMI would effectively receive a rebate from the filed cashout rates. Section 453 does not provide TEMI a defense to payment of the cashout rates.

On reconsideration, this court finds that equitable estoppel is not available as an

---

4. Iowa Code § 476.5 states: "No public utility shall make or grant any unreasonable preferences or advantages as to rates or services or subject any person to unreasonable prejudice or disadvantage."

5. The legislative history of section 453 supports PG & E's argument that a billing error lacks the willful intent needed to be considered impermissible discrimination. Chapter 2, section 2 of the 1878 predecessor to section 453 stated: "A railroad company shall be deemed guilty of unjust discrimination in the following cases: First When it shall directly or indirectly willfully charge, demand, or receive from any person or persons any less sum for passage or persons any less sum for passage or freight than from any other person or persons at the same time, between the

same places, and the same direction, for the like class of passage, or for the like quantity of goods of the same class. Second When it shall directly or indirectly willfully charge, demand, or receive from any person or persons, as compensation for receiving, handling, storing, or delivering any lot of goods or merchandise, any less sum than it shall charge, collect, or receive from any other person for the like service, to a like quantity of goods of the same class, at the same place." *Gay Law Students Ass'n*, 156 Cal. Rptr. 14, 595 P.2d at 605 n. 12. Later modifications of what became section 453 increased the reach of the statute beyond rate discrimination. *Id.* at 605. The court did not find, however, that the modified statute no longer required the discrimination be "willful."

affirmative defense under California law under the present record. TEMI and PG & E are both sophisticated gas companies with experience in the industry. PG & E inadvertently failed timely to invoice TEMI for cashout amounts, but provided the 600 Reports containing information that TEMI could have used to learn the status of its accounts and restore them to balance. California courts strongly enforce payment of undercharges to maintain the fairness of the regulated rate system. TEMI has not alleged that PG & E made fraudulent misrepresentations intended to induce TEMI to increase the size of its imbalance. PG & E's motion to reconsider is GRANTED. TEMI's equitable estoppel cause of action is DISMISSED, with prejudice.

## II. TEAI's and TEMI's Cross–Motion for Reconsideration

### A. Modification

██ PG & E produced to TEMI several documents on May 21, 2003, including an email exchange among several PG & E employees. (Docket Entry No. 72, Ex. A). TEAI and TEMI contend that newly-discovered evidence creates a fact issue as to whether PG & E and TEMI's course of dealing modified the CPBA.

In one of the email responses, a PG & E employee, Chuck Taylor, explains PG & E's past practices in cases in which cashout imbalances are not timely paid:

> If PG & E contributed in some way to the problem (i.e. failed to deliver an imbalance statement in a timely manner, told the customer that they did not have to make up the volumes, etc.) which contributed to the situation, we have allowed those imbalance volumes for those months to be made up in-kind in months subsequent to the cashout bill. For bills which cover long periods, we have made payment arrangements with

the customer to repay the "old" charges, generally up to the time span of the old charges, and most often not more than a year. The arrangements always include payment of current ($663,200.57). Credit and Collection would have to be involved in arrangements involving the size of these bills.

(*Id.* at p. 2).

Although PG & E did fail to send invoices, it did timely make the 600 Reports available to TEMI, giving TEMI information and time necessary to correct imbalances before they were cashed out. There is no evidence that anyone at PG & E told anyone at TEMI that it did not have to make up the volumes, or that Rousselot, Patterson, or anyone else at TEMI believed that volumetric balancing over time was an available option. (Docket Entry No. 66, Memorandum and Order of March 31, 2003, at 41). Section 532 expressly prohibits PG & E from modifying any terms of the CPUC-approved CPBA by course of performance for the benefit of a particular customer. The recently discovered email does not affect this court's conclusion that PG & E's course of performance did not modify the CPBA. TEAI's and TEMI's motion to reconsider this court's finding that PG & E's course of performance modified the CPBA is DENIED.

### B. Material Breach of the CPBA

██ In the email exchange, Cathy Paulsen, a PG & E employee asked, "I'm just curious why [TEMI] didn't do anything when they received the imbalance statement?" (Docket Entry No. 72, Ex. A at 1). Katherine Moran, another PG & E employee, responded, "According to our records it appears that Torch did do some trading early on. Looks like they stopped in mid 1999. I don't know why. Maybe

they figured that since they didn't get billed for cashouts why bother trading? ? I do know that the person responsible for the CPBA at Torch left the company last year and they didn't even have his password to InsideTracc in order to nominate gas." *(Id.)*. TEAI and TEMI contend that Moran's response supports their argument that PG & E's failure timely to invoice cashouts was a material breach of the CPBA, because TEMI would have altered its behavior in response to timely cashout invoices.

Moran's email does not create a disputed fact issue material to deciding whether PG & E's failure timely to invoice cashouts was a material breach of the CPBA. Moran's response does not support an inference that TEMI believed that PG & E was not invoicing cashouts because TEMI had properly balanced its account. If anything, Moran's response suggests that TEMI relied on PG & E's continued failure to send invoices as a reason to avoid trading, without regard for whether the accounts were balanced or not. The Moran email in part notes TEMI's failure to access Inside Tracc, PG & E's online system for providing gas account information. That failure is consistent with this court's previous finding that PG & E had provided TEMI the information needed to balance its gas deliveries and avoid cashouts, but TEMI failed to use this information.

■ TEAI and TEMI also contend that this court must strictly construe the CPBA against PG & E. "[I]f there is an ambiguity in a tariff any doubt in its interpretation is to be resolved in favor of the shipper." *Transmix Corp.*, 187 Cal.App.2d at 267, 9 Cal.Rptr. 714. This court did not find that the CPBA was ambiguous. Rather, this court found that PG & E's failure timely to invoice cashout amounts was not a material breach of the CPBA that frustrated the basic purpose of the contract and excused

TEMI's performance. TEAI's and TEMI's motion for reconsideration of this court's finding that PG & E's failure timely to invoice cashout amounts was not a material breach of the CPBA is DENIED.

## III. Conclusion

PG & E's motion for reconsideration is GRANTED. TEAI's and TEMI's equitable estoppel cause of action is DISMISSED with prejudice. TEAI's and TEMI's motion for reconsideration of this court's findings that the CPBA was not modified by the parties' course of dealing and that PG & E's failure timely to invoice cashout amounts was not a material breach of the CPBA is DENIED. No later than **August 29, 2003,** the parties must file a written submission identifying any remaining issues or a proposed form of final judgment.