[Civ. No. 10992. Third Dist. Apr. 6, 1965.]

JOE VILA, Plaintiff and Appellant, v. TAHOE SOUTH-SIDE WATER UTILITY et al., Defendants and Respondents.

Beverly, Riley & Hamilton, Melvin E. Beverly and Harold F. Bradford for Plaintiff and Appellant.

Wilke, Fleury & Sapunor and Joe S. Gray for Defendant and Respondent.

PIERCE, P. J.—The issue we decide on this appeal is whether the superior court has jurisdiction under Public Utilities Code section 2106[1] over an action brought by a prospective water user (1) for a mandatory injunction commanding a water company, which is a public utility, to provide water service in accordance with its unambiguous schedule of rates and rules and regulations on file with the California Public Utilities Commission (hereinafter the "commission"), (2) for compensatory damages for refusal so to provide service, and (3) for exemplary damages because of the utility's alleged wilful refusal so to provide service.

Specifically, plaintiff, Joe Vila, owner of an office building within the area served by defendant Tahoe Southside Water Utility (hereinafter "utility")[2] complains that he sought for his building containing rental units a "single service connection" from the utility's available water main which was refused. Demurrer to plaintiff's first amended complaint (upon the ground that the court was without jurisdiction)

---

[1]Hereinafter, unless otherwise indicated, all section references are to the Public Utilities Code.

[2]Two defendants are named in the complaint: Tahoe Southside Water Utility, sued as a corporation, and Frank Globin, doing business under that corporate name. We will refer in this opinion to the utility in the singular.

was sustained without leave to amend. Plaintiff has appealed from the judgment of dismissal which followed. We have concluded that the court does have jurisdiction over the action and reverse the judgment.

The first amended complaint in this action (hereinafter referred to as the "complaint") alleges that plaintiff is the owner of premises described as Lot F of Lakeview Pines Subdivision, with improvements consisting of a building containing "spaces designed and intended for use as medical offices and uses of a similar nature." It is also alleged that these premises are located within the boundaries of defendant public utility, which has a "tariff" on file with the commission and that the utility is required to supply water to plaintiff's premises and has a water main available to do so. Next alleged is that on November 1, 1963, plaintiff applied for water to be supplied to said premises through a "single service connection," which was the type of service the utility was required to provide under its "tariff," but that the utility wrongfully refused to supply such service or any other service except a "multiple service connection." Plaintiff's premises, so the complaint alleges, have been deprived of any water supply since November 1, 1963, as a result of which the building has remained vacant.

The complaint is in three counts, one seeking an injunction, a second, compensatory damages; and a third, exemplary damages.

The "tariff" referred to in the complaint is, as appears from the argument, a loosely used generic name for the "schedules showing all rates, tolls, rentals, charges, and classifications collected or enforced, or to be collected or enforced, together with all rules, contracts, privileges, and facilities which in any manner affect or relate to rates, tolls, rentals, classifications or service." These are required to be filed with the commission by section 489. It is sometimes also called a "schedule of rates and rules and regulations." (See *In re Moorpark Farmers Water Co.* (1926) 29 C.R.C. 132.) The "tariff" has been lodged with this court. We take judicial notice of it. (Code Civ. Proc., § 1875, subds. 2 and 3.) On June 20, 1950, by Decision No. 44320, it was ordered by the commission to be filed (to be effective July 15, 1950). It was so filed. The part pertinent to this inquiry is subdivision B of Rule and Regulation No. 18. It provides:

"B. Service to Multiple Units on Same Premises.

"Separate houses, buildings, living or business quarters on

the same premises or on adjoining premises, under a single control or management, may be served water at the option of the applicant by either of the following methods:

"1. Through separate service connections to each or any thereof.

"2. Through a single service connection to supply the entire premises, in which case only one minimum charge will be applied.

"The responsibility for payment of charges for all water furnished combined units, supplied through a single service connection, in accordance with these rules, must be assumed by the applicant."

This action was brought under section 2106. That section provides: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

"No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt."[3]

Briefly stated, the position of defendant utility before the trial court and here is this: that the California Constitution, article XII, section 23, set up the Railroad Commission (now called the Public Utilities Commission) to regulate and control public utilities, giving the Legislature plenary power to grant jurisdiction and powers thereto, which it has done (by sections of the code hereinafter to be mentioned) and with no power in any court except the Supreme Court to "interfere with the commission in the performance of its official duties . . . ." (See § 1759 quoted below.)

There is no doubt of the accuracy of that statement—as a

---

[3]The derivation of this section: Statutes 1909, chapter 312, sections 21, 38, pages 505, 513; amended in 1911 and 1915 by Statutes 1915, chapter 91, section 73, page 165. The section as amended in 1915 was substantially the same as the present code section.

broad principle. In fact it has been held that "the legislature might have withheld from the courts of the state any power of reviewing the acts of the commission." (*Clemmons* v. *Railroad Com.*, 173 Cal. 254, 258 [159 P. 713]; *Truck Owners etc. Inc.* v. *Superior Court*, 194 Cal. 146, 152 [228 P. 19].)

Certain restraints on the courts have, as contended by the utility, been imposed by the Legislature. Section 1759 in pertinent part provides: "No court in this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties. . . ."

In *Harmon* v. *Pacific Tel. & Tel. Co.*, 183 Cal.App.2d 1 [6 Cal.Rptr. 542], a case upon which defendant utility places principal reliance, the plaintiff brought an action in the superior court seeking declaratory relief regarding the disconnection of his telephone for nonpayment of a bill with "bulk billing" charges. This "bulk billing" had been expressly authorized by the commission. It was held the superior court had no jurisdiction; that the effect of any court order would be an attempt to superimpose the court's ruling upon that of the commission.

In a very recent case in our Supreme Court (*People* v. *Superior Court* (March 11, 1965) 62 Cal.2d 515 [42 Cal. Rptr. 849, 399 P.2d 385]) the court, upon the petition of the commission, issued a writ prohibiting the superior court from hearing a declaratory relief action filed by a water utility to determine (1) the validity of overcharge refunds ordered by the commission, (2) whether these were assignable, and also (3) whether the State of California was entitled to unclaimed refunds. When the superior court action had been brought, proceedings were still pending before the commission wherein the issues sought to be litigated in court would be determined by it. The Supreme Court (per Chief Justice Traynor) held (on p. 518 of 62 Cal.2d): ". . . Under these circumstances section 1759 precludes the superior court from adjudicating at [the utility's] behest the very issues that will necessarily be presented to the commission in the continuing exercise of its jurisdiction in the refund proceedings. [Citations.]"

Both in *Harmon, supra,* and in *People* v. *Superior Court,*

*supra,* the court found that to concede jurisdiction in the superior court would be an interference "with the commission in the performance of its official duties" and would thus be squarely within the restrictions of section 1759. But the cue to decision in this case is in the following excerpt from the opinion in *People* v. *Superior Court, supra* (pp. 517-518, 62 Cal.2d) : "Had [the utility] complied with the commission's order to formulate a plan for making refunds to its customers and secured the commission's approval thereof, the appropriate trial courts would have jurisdiction to adjudicate any disputes between [the utility] and third parties arising under the plan. [Citations.] By giving proper effect to an approved refund plan, the courts in such actions would be acting *not in derogation but in aid of the commission's jurisdiction.*"[4] (Italics supplied.)

Examining the facts of this case with that distinction in mind, we note : the utility here on order of the commission had filed its schedule of rates, rules and regulations which in form and content complied with said order. Under these the utility had undertaken to supply water "[t]hrough a single service connection" at the option of the water user upon his application therefor. There was no ambiguity in the schedule. The commission had accepted the schedule in which this undertaking was set forth. This schedule had taken effect July 15, 1950, and could not be changed without subsequent order by the commission. There was therefore an order by the commission already in effect directing the utility to carry out the undertakings contained in the schedule. These facts distinguish *Harmon, supra,* and *People* v. *Superior Court, supra,* from the case at bench.

Once a schedule of rates, rules and regulations ordered by the commission has been filed, the schedule goes into effect without further order of the commission, it remains in effect unless and until an application for an increase in rates or a change in the rules is made and ordered. (*In re Moorpark Farmers Water Co., supra,* 29 C.R.C. 132; *In re Campbell Water Co.* (1921) 19 C.R.C. 662). Section 491 provides in part: "Unless the commission otherwise orders, no change shall be made by any public utility in any rate or classification, *or in any rule* or contract relating to or affecting any

---

[4]Justice McComb dissented in *People* v. *Superior Court, supra.* He felt that the superior court action did not seek relief in derogation of the commission's jurisdiction. In his opinion the superior court should have been conceded jurisdiction under section 2106.

rate, classification, or service, or in any privilege or facility, except after 30 days' notice to the commission and to the public.'' (Italics supplied.) Section 454 provides in part as follows: ''No public utility shall raise any rate or so alter any classification, contract, practice, or rule as to result in any increase in any rate except upon a showing before the commission and a finding by the commission that such increase is justified.'' (In this connection it should be noted that if ''a multiple service connection'' is required when a ''single service connection'' at ''only one minimum charge'' is provided for in the schedule, an increase in rates is involved.)

It has also been observed by the commission (in *San Francisco Milling Co.* v. *Southern Pac. Co.* (1930) 34 C.R.C. 453, 456, that ''the rates in tariffs on file with the Commission should be assessed and collected without the public first having to determine whether or not they were lawfully published and filed.''

This same decision of the commission also holds that one of the vital benefits of public utility regulations would be nullified were the commission to hold that provisions for tariffs on file could only be applied after an examination had been made to determine whether or not they conformed to the ''long and short haul'' provisions of the Constitution and act. And the commission held in *Chas. Brown & Sons* v. *Valley Express Co.* (1941) 43 C.R.C. 724, 728, that ''Effect must be given to every word, phrase or sentence of the provision to be interpreted. If the language used is unambiguous there is no room for construction: the provision must be applied in accordance with the literal meaning of the words used.''

Under these holdings by the commission and the statutes quoted above, it is clear, as appellant contends, that when this action was brought, the commission had already acted as regards the rule and regulation of the utility here involved, and therefore the utility is obligated (assuming the facts pleaded by appellant as to the status of his premises to be provable) both by law and by order of the commission to furnish water with the single service connection as demanded.[5]

[5]We make this observation with complete assurance because of a fact which, although outside the record, comes within our notice (actual and judicial, under Code Civ. Proc., § 1875) through a document lodged with the court at the conclusion of the oral argument *by respondent.* It appears therefrom that, pending this litigation, proceeding *was* instituted before the commission by appellant here, Joe Vila, as complainant, against respondent. (Case No. 7989 filed August 24, 1964.) Interesting

With this established, the inquiry as to the applicability of section 2106 in its relation to section 1759 narrows.

In *California Adjustment Co.* v. *Atchison, T. & S. F. Ry. Co.,* 179 Cal. 140 [175 P. 682, 13 A.L.R. 274], the contention was made by the railroad that no action would lie in the superior court where a finding of fact by the commission was necessary on an issue as to whether a railroad had charged an excessive rate. The court held, however, that that rule applied only where ''an examination or investigation of evidence . . . is necessary in order to determine whether the public utility has or has not charged an excessive or discriminatory amount. It could not apply to a situation . . . where there is nothing for the railroad commission to investigate or examine. . . . It is a question for the courts, as is recognized by the Public Utilities Act itself, and the right of the shipper comes within the terms of section 73, subdivision a, of that act [now § 2106], which authorizes an aggrieved party to prosecute an action in the courts for any loss or injury arising from a failure of a carrier to do any act or thing required to be done by the constitution or any law of the state or any order or decision of the commission. [Citations.]'' (P. 145.)

In *Coast Truck Line* v. *Asbury Truck Co.* (1933) 218 Cal. 337 [23 P.2d 513], a public utility sued in the superior court to enjoin a trucking company which had been ordered by the commission to obtain a certificate of public convenience but had not done so from operating. The court held the superior court had jurisdiction.

It first pointed out (on p. 339) that ''The action of the superior court . . . does not run counter to'' section 67 of the Public Utilities Act (now § 1759) because the court had not attempted to '' 'enjoin, restrain, or interfere' with the commission in the performance of its official duties;'' that it had merely ''given effect to the most recent and final order of the commission. . . .'' And the court held (on p. 339): ''As a court of general jurisdiction the superior court may properly interpret and give effect to any document or order even though it be the result of action by the legislative, executive or judicial branch of the government.''

is the commission's observation: ''. . . To avoid any future issue on this subject, defendant is placed on notice that complainant's medical-dental building and grounds are an 'integral property or area,' and thus are a single 'premises' as defined in defendant's Rule and Regulation No. 1, and therefore entitled to a single service connection pursuant to Section B of defendant's Rule and Regulation No. 18. . . .''

█ It has never been the rule in California that the commission has *exclusive* jurisdiction over any and all matters having any reference to the regulation and supervision of public utilities. So to hold would be to deny any meaningful application of section 2106 expressly granting jurisdiction to the courts to award both compensatory and (in a proper case) exemplary damages.

The Legislature in the Public Utilities Code has recognized that in some instances (without enumerating them) there is concurrent jurisdiction between the commission and the superior court. ''Concurrent jurisdiction'' is referred to both in section 735 and section 736. These are statutes of limitations. In the former section it is stated: ''. . . All complaints for damages resulting from a violation of any of the provisions of this part, except Sections 494 and 532,[6] shall either be filed with the commission, or where concurrent jurisdiction of the cause of action is vested by the Constitution and laws of this State in the courts, in any court of competent jurisdiction, within two years from the time the cause of action accrues, and not after.''

California courts have frequently proclaimed concurrent jurisdiction in the superior court over controversies between utilities and others not inimical to the purposes of the Public Utility Act. In *Truck Owners, etc. Inc.* v. *Superior Court, supra,* 194 Cal. 146, the court, after stating that the Legislature under the Constitution had full power to divest the superior court of *all* jurisdiction, and had exercised that power in denying jurisdiction to '' 'enjoin, restrain or interfere with the commission in the performance of its official duties,' '' and had also vested in the Supreme Court sole power ''to compel the commission to act,'' held that the superior court, nevertheless, had power to hear and determine a cause involving a complaint against a transportation company seeking to enjoin its transportation of freight as a public carrier without a certificate of public convenience. The court noted that the suit did not involve an interference with any act of the commission since the latter had not acted; that if it ever did act any conflicting injunction issued by the court would be superseded. A contention that recognition of concurrent jurisdiction in the court and the commission would cause confusion was rejected.

Concurrent jurisdiction was also recognized in *City of*

---

[6]Neither section 494 or 532 is here applicable.

*Oakland* v. *Key System* (1944) 64 Cal.App.2d 427 [149 P.2d 195], a case involving a controversy between the city and the utility over the limits of the exercise of use of a franchise area. The court assumed that the commission had general jurisdiction but held that the superior court also had jurisdiction upon two grounds (1) the failure of the commission to act, and (2) because the court in any event would have jurisdiction where the question involved was strictly a legal one. In the opinion (on pp. 434, 435) the court observes: "Thus, in certain cases and as to certain problems relating to public utilities the jurisdiction of the commission is exclusive. As to other matters the regular law courts have jurisdiction. In between these two well-defined fields there is a somewhat ill-defined field in which the law courts have jurisdiction unless the commission has elected to act as to the particular subject matter."

*Atchison, T. & S. F. Ry. Co.* v. *Railroad Com.*, 212 Cal. 370 [298 P. 991], was a proceeding on writ of review before the Supreme Court from a decision of the commission ordering a refund of excess freight rates. It did not, therefore, involve superior court jurisdiction, which was conceded. Observations of the court, however, are pertinent. The opinion quoted from *Pennsylvania R. R. Co.* v. *International Coal Min. Co.*, 230 U.S. 184 [33 S.Ct. 893, 57 L.Ed. 1446], where the court had "entertained directly a suit for damages growing out of rebates," and where the opinion had said, as quoted on page 377 of the *Atchison* decision: " '. . . So far as the determination [of the reasonableness of rates, and the permissible discrimination based upon difference in conditions] depends upon facts, no jurisdiction to pass upon the administrative questions involved has been conferred upon the courts. That power has been vested in a single body, so as to secure uniformity and to prevent the varying and sometimes conflicting results that would flow from the different views of the same facts that might be taken by different tribunals. *None of these considerations, however, operates to defeat the courts' jurisdiction in the present case. For even if a difference in rates could be made between free and contract coal, none was made in the only way in which it could have been lawfully done. . . . That being true, only that single rate could be charged. When collected, it was unlawful, under any pretense or for any cause, however equitable or liberal,* to pay a part back to one shipper or to every shipper.' " (Italics supplied.)

·

The court in *Atchison, supra,* concludes (on p. 379) that in a rate rebate case the commission can order the rebate and sue for its enforcement in the court (under then § 32a of the Public Utilities Act—now § 2102) but that also under section 73a of the act (now § 2106) "the courts have concurrent jurisdiction with it [the commission] as to all such cases as involve no exercise of administrative or regulatory power."

■ We have seen that in this case the defendant utility's schedules of rates, and its rules and regulations containing an undertaking to supply the very service demanded in plaintiff's complaint were already in effect when this complaint was filed. No administrative study, survey, or investigation was necessary to determine whether a "single service connection" should be made. The utility's obligation to make it was clear under an unambiguous provision in its own rules (rules which it had been required to adopt by order of the commission).

Under these circumstances and under the authorities discussed above, we hold that the superior court had jurisdiction to hear and decide all issues framed by the complaint. Existence and exercise of this jurisdiction is in aid and not in derogation of the jurisdiction of the commission.

By statute the commission is empowered to enforce its orders by suit (§ 2101), by mandamus or injunction (§ 2102); it also has power to impose fines (§ 2100) and recover them by an action (§ 2104). It also may punish for contempt (§ 2112). But section 2106 is the only statutory authority for the recovery, by a person injured, of damages, compensatory and exemplary. The commission has no authority to award damages. That was sought in *M. L. M. Jones* v. *Pacific Tel. & Tel. Co.* (Nov. 1963) 61 Cal. P.U.C. 674, where the commission asserted its lack of jurisdiction either to make a finding concerning, or to order, damages.

Yet it is just that jurisdiction for such an award should exist before some tribunal. The pleaded facts of this case are illustrative: It is alleged that plaintiff owns a building containing a number of medico-dental rental units which has been vacant since November 1, 1963, because of a wilful failure of the utility to furnish water service. To deny a plaintiff access to the courts for the redress of such a wrong would be a gross injustice. To require him to have to bring preliminary proceedings before the commission merely to obtain the inevitable finding of fact obvious on the face of the utility's schedule (and effectually a repetition of a fact

already found) would only produce a useless delay in the administration of justice. We attribute to the Legislature an intent in enacting section 2106 to provide the prospective user wrongfully deprived of water service to which he is entitled with a speedy and adequate remedy in the superior court.

Nothing stated herein is inimical to the holding of our Supreme Court in *Miller* v. *Railroad Com.*, 9 Cal.2d 190 [70 P.2d 164, 112 A.L.R. 221], cited by respondent. That case held that a judgment of the superior court declaring a water company to be a public utility and the plaintiffs to be the beneficiaries in the use of the water devoted to public use was binding upon the parties only until the commission assumed jurisdiction for the purpose of regulating its operations; that the judgment was ineffective to prevent the commission from ordering a change in service and an increase of rates thereafter. Similarly here, if the commission hereafter should authorize the utility to change its rules and regulations so as to provide only ''multiple service connections'' to buildings such as plaintiff's any injunction issued by the court herein would yield to that determination. Until the commission has so acted, and there is no present indication that it intends to, the superior court has jurisdiction to give injunctive relief as well as to award damages for past acts.

The judgment is reversed and the cause remanded for proceedings conforming to the views expressed in this opinion.

Friedman, J., and Regan, J., concurred.