[No. B151296. Second Dist., Div. Three. Sept. 12, 2002.]

DAVID CUNDIFF et al., Plaintiffs and Appellants, v.
GTE CALIFORNIA INCORPORATED et al., Defendants and
Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV of the Discussion.

1396

### COUNSEL

Hadsell & Stormer, Dan Stormer; Law Offices of Marc Coleman and Marc Coleman for Plaintiffs and Appellants.

Munger, Tolles & Olson, Henry Weissmann, Richard Drooyan and A. Tali Zer-Ilan for Defendants and Respondents.

### OPINION

**CROSKEY, Acting P. J.**—Plaintiffs David Cundiff, Jennifer Cundiff, John Debruin, and Eva Debruin (plaintiffs) appeal from an order of dismissal

entered after the trial court sustained, without leave to amend, the demurrer of defendants GTE California Incorporated and Verizon California, Inc. (GTE California, Verizon California, collectively defendants) to plaintiffs' first amended complaint.[1]

Defendants are in the business of supplying telephone service to portions of the State of California. Part of their business includes supplying telephone equipment to their customers, including telephones. This suit concerns defendants' rental charges for such telephones. Plaintiffs, who seek certification as a class on behalf of all persons similarly situated to themselves, contend defendants charge their customers for obsolete or nonexistent telephones, and have imposed such charges, either intentionally or negligently, for over 15 years, without their customers' knowledge.[2]

Defendants' demurrer was sustained when the trial court ruled that section 1759 of the Public Utilities Code gives the Public Utilities Commission (the commission) either exclusive or primary jurisdiction over the matters alleged in the amended complaint.[3] Plaintiffs contend this case is not governed by section 1759, but rather by Public Utilities Code section 2106, and therefore original jurisdiction is proper in the trial court.[4] Plaintiffs also contend the doctrine of primary jurisdiction does not bar this suit, nor require its stay.

Our examination of the relevant statutes and cases leads us to conclude that (1) the commission does not have exclusive jurisdiction over this case,

---

[1] According to the parties, GTE California and Verizon California are actually the same entity, in that the latter was formerly known as the former, with the name change occurring in June 2000.

[2] In our use of the word "plaintiffs" throughout this opinion, we include the members of the proposed class.

[3] Public Utilities Code section 1759 (section 1759) states: "(a) No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court.

"(b) The writ of mandamus shall lie from the Supreme Court and from the court of appeal to the commission in all proper cases as prescribed in Section 1085 of the Code of Civil Procedure."

[4] Public Utilities Code section 2106 (section 2106) states in relevant part: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. *An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.*" (Italics added.)

(2) it was an abuse of discretion to find that the commission has primary jurisdiction over this case, and (3) plaintiffs have stated facts sufficient to constitute multiple causes of action. Therefore, we will reverse the order of dismissal and remand this case for further proceedings.

BACKGROUND OF THE CASE

1. *The Amended Complaint*

a. *The Alleged Facts of the Case*

This suit was filed in October 2000. According to the amended complaint (hereinafter the complaint), defendants have enjoyed a virtual monopoly of all residential telephone customers within that part of California to which defendants provide telephone service. David and Jennifer Cundiff have been customers of defendants since at least 1984, while John and Eva DeBruin have been defendants' customers since at least 1972. Plaintiffs seek class certification for defendants' customers who have, within the four years prior to the filing of the complaint, paid defendants' monthly "equipment rental" charge, which plaintiffs describe as being a charge for "obsolete or non-existent telephones." Plaintiffs define "obsolete" as "any rotary or other telephone provided by [d]efendants for which the residential customer has been charged rental fees for more than five years."

The complaint alleges that in 1984, telephone companies were required to deregulate, which enabled telephone customers to purchase telephone equipment from sources other than their telephone service provider. Prior to that, residential telephone customers were required to rent telephones from their telephone service provider, such as GTE California. Between 1985 and 1988, other telephone companies, such as Pacific Bell, eliminated their telephone rental program; GTE California, however, continued to bill its customers for rental telephones.[5]

---

[5]The trial court judicially noticed exhibit B to defendants' demurrer. Exhibit B is an August 1985 decision of the commission respecting the detariffing of "customer premises equipment" (CPE). Telephone companies were directed to dispose of the telephones being used by their customers by abandoning them in place (that is, transferring title to the customers) or by transferring the equipment to nonregulated accounts, departments or subsidiaries, or by a combination of such methods. After detariffing CPE, telephone companies could bill their customers for rental of CPE provided that the charges are "separately identified." (The phrase "separately identified" appears in the commission's interim order. In its related "interim opinion," the commission also used the phrase "separately stated and clearly identified" in its discussion of how telephone rental charges should be made by telephone companies.) Additionally, the companies were to have a sales program for telephones, including bill inserts or mailers to explain the program, and installment purchase plans having 12 monthly

Since 1988, the rates set by defendants and the information provided by them, for residential customers, for telephone rentals, have not been regulated by the government. Since 1988, defendants have billed residential customers on a monthly basis for telephone rental by using the term "equipment rental" on their bills. Defendants' monthly statements, however do not explain the "equipment rental" charge. Nor have defendants periodically advised their customers that the equipment rental charge is for telephones. Defendants bill their customers for unreturned or unaccounted-for rental telephones, particularly rotary telephones, that cost less than $20, even though the rental charges have added up to hundreds of dollars (and in some cases over $1,000), without informing their customers of this ever-growing expense and of alternative options the customers have. Moreover, the rental rates are grossly high.

Plaintiffs assert that by characterizing the rental of such telephones as "equipment rental," defendants have deceptively represented to their customers that the customers possess such rental equipment and are actively using it, and that the rental has some value to them. Such characterization fails to inform customers of the cost versus benefit nature of the charge. Such business practices have unjustly enriched defendants by tens of millions of dollars, and the burden has fallen primarily on senior citizens because this is the largest group of customers who had rotary telephones.

### b. *Plaintiffs' Causes of Action*

Based on this alleged failure of defendants to inform their residential customers of the true nature and benefit of their monthly "equipment rental" charges, plaintiffs alleged defendants violated certain sections of the Business and Professions Code, namely section 17200 et seq. (which addresses unfair competition), and section 17500 (which addresses false or misleading statements in connection with the provision of services and goods). Plaintiffs further alleged entitlement to relief under Civil Code section 1750 et seq. (the Consumers Legal Remedies Act) and Civil Code sections 1709 and 1710 (which address fraud and negligent misrepresentation). Plaintiffs prayed for certification of a class, declaratory and injunctive relief, damages, including prejudgment interest, attorney's fees, and other relief deemed appropriate by the court.

### 2. *The Demurrer*

In their demurrer, defendants asserted that under section 1759, the commission has exclusive jurisdiction to hear this case. Alternatively, defendants

installments with no interest. With those various options, the commission concluded that a uniform statewide plan for detariffing CPE was not required.

The parties treat the interim opinion and the interim order as the operative opinion and order for this case.

asserted that even if the trial court did not lack jurisdiction to hear it, the trial court should defer to the jurisdiction of the commission, under the primary jurisdiction doctrine, "because that agency has special competence and a regulatory interest in regulating the provision of rental telephone services" and because "[i]nvoking the primary jurisdiction doctrine would also advance the goals of uniformity and consistency." The demurrer was filed on November 27, 2000, and the hearing was ultimately held on April 19, 2001, at which time the court sustained the demurrer without leave to amend on the ground that section 1759 "gives the public utilities commission exclusive and/or primary jurisdiction over the alleged matters." Thereafter, plaintiffs dismissed the other defendants without prejudice (GTE Corporation and Bell Atlantic Corporation), and the case was dismissed by the trial court on June 4, 2001. This timely appeal followed.[6]

### 3. *Defendants' Requests for Judicial Notice*

Defendants sought and obtained judicial notice of administrative complaints filed with the commission, by two of defendants' customers, respecting defendants' policy of including a telephone rental charge on such customers' bills and labeling the charge with a description that does not specifically identify it as being for rental of a telephone. In both of the complaints, the customers stated that defendants have been charging them such rental fees since or before 1987, and that they have been unaware that they were paying rent on telephones. They demanded a refund of the charges. One complaint was filed in January or February 2000, and GTE California was directed by the commission to answer it. That complaint was ultimately dismissed by the complainant, Wilma Ker, later that year. However, the record does not reflect whether the complaint was settled or adjudicated by the commission prior to the dismissal. The record reflects that the other complaint, by a Robert Kaveney, was filed in November 2001, and the commission directed Verizon California to answer it. That complaint has recently been adjudicated by the commission, and we address that adjudication later in this opinion.

Judicial notice was also taken of a February 2000 "consumer advisory" issued by the commission entitled "Renting Vs. Buying Your Phone." The written advisory notes that since the mid-1980's, some customers of telephone companies may have replaced their rental telephones with ones they purchased for themselves and yet did not return the rentals to the telephone

---

[6]Plaintiffs appealed both from the order of dismissal and from the minute order sustaining respondent's demurrer without leave to amend. The latter is not an appealable order. (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 878 [150 Cal.Rptr. 606].)

company, in which case the customers may still be paying the company's monthly rental fee. The notice advises consumers who own their own telephone to review their current telephone bill to see if they are being charged for a rental telephone, to look for language such as "phone rental," or "equipment rental," and to contact their telephone company and stop the charges if they appear on the bill. The notice also advises consumers that if they are renting their telephone, they may wish to consider the cost effectiveness of returning it to the telephone company and purchasing their own telephone because renting a telephone for a year may be more expensive than purchasing one.

In February 2000, the commission also initiated a proceeding "to establish rules for protecting consumer rights in today's competitive telecommunications services marketplace," and invited the public to "file comments on the analyses and recommendations contained in a report prepared by our Telecommunications Division, and to present alternative ideas and proposals . . . to promote consumer protection in the telecommunications industry." The commission's "Order Instituting Rulemaking" states that the telecommunications division sought to have the commission recognize certain consumer rights, including the right to (1) clear and complete terms and conditions for service agreements between consumers and a provider, and (2) be accurately billed for services they authorize.

## CONTENTIONS ON APPEAL

On appeal, plaintiffs contend the commission does not have exclusive jurisdiction over their claims, and the primary jurisdiction doctrine neither bars this suit nor warrants a stay of it. Additionally, plaintiffs assert that the facts alleged in each of the counts in their complaint are sufficient to state a cause of action.

## DISCUSSION

### I

*Standard of Review*

A demurrer tests the sufficiency of the allegations in a complaint as a matter of law. (*Pacifica Homeowners' Assn. v. Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1151 [224 Cal.Rptr. 380].) We review the sufficiency of the challenged complaint de novo. (*Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 529 [260 Cal.Rptr. 713].) We accept as true the properly pleaded allegations of fact in the

complaint, but not the contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We also accept as true facts which may be inferred from those expressly alleged. *Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) We consider matters which may be judicially noticed, and we "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) We do not concern ourselves with whether the plaintiffs will be able to prove the facts which they allege in their complaint. (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1521 [37 Cal.Rptr.2d 810].)

The judgment or order of dismissal must be affirmed if any of the grounds for demurrer raised by the defendants is well taken and disposes of the complaint. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) █ It is error to sustain a general demurrer if the complaint states a cause of action under any possible legal theory. (*Ibid.*) It is an abuse of the trial court's discretion to sustain a demurrer without leave to amend if there is a reasonable possibility the plaintiffs can amend the complaint to allege any cause of action. To prove abuse of discretion, plaintiffs must demonstrate how the complaint can be amended. Such a showing can first be made to the reviewing court. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].)

II

*This Suit Is Authorized by Section 2106, Not Precluded by Section 1759*

█ Section 2106 and section 1759 address different things. Section 1759 defines and limits the power of courts to pass judgment on, or interfere with, what the commission does. Section 2106, on the other hand, confirms the full power of the courts to pass judgment on what utilities do. Section 2106 "explicitly authorizes California courts to hear claims against public utilities for damages." (*Cellular Plus, Inc. v. Superior Court* (1993) 14 Cal.App.4th 1224, 1245 [18 Cal.Rptr.2d 308].) The similarity between the two statutes is that they both dictate which courts have jurisdiction to engage in these activities. Only appellate courts can review decisions and orders of the commission and interfere with its actions, whereas suits for relief against utilities can be brought in the trial court.

However, our Supreme Court has recognized that a plaintiff's attempt to obtain relief under section 2106 may have the *effect* of interfering with the commission's regulation of utilities. █ In *Waters v. Pacific Telephone*

*Co.* (1974) 12 Cal.3d 1, 4 [114 Cal.Rptr. 753, 523 P.2d 1161], the court stated that section 2106 "must be construed as limited to those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies."[7] The plaintiff in *Waters* sued the defendant, under section 2106, for damages of $750,000, alleging the defendant failed to provide her with adequate telephone service and such failure caused her damages. The court held the plaintiff's action was barred by section 1759 because it interfered with the commission's policy "of limiting the liability of telephone utilities for ordinary negligence to a specified credit allowance, and [the commission] has relied upon the validity and effect of that policy in exercising its rate-making functions." (*Waters*, at p. 10.) In a subsequent case, the court stated: "Under the *Waters* rule, . . . an action for damages against a public utility pursuant to section 2106 is barred by section 1759 not only when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would 'reverse, correct, or annul' that order or decision, but also when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy of the commission, i.e., when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 918 [55 Cal.Rptr.2d 724, 920 P.2d 669].) Thus, trial courts have concurrent jurisdiction with the commission " 'over controversies between utilities and others *not inimical to the purposes of the Public Utility Act.*' ([*Vila v. Tahoe Southside Water Utility* (1965) 233 Cal.App.2d 469,] 477 [43 Cal.Rptr. 654], italics added.)" (*San Diego Gas & Electric Co. v. Superior Court, supra,* 13 Cal.4th at p. 944.)

Assuming arguendo that the *amount* of money defendants charged each month as rent for telephones was approved by the commission, we do not perceive the thrust of plaintiffs' complaint to be a challenge to that amount. Nor do we perceive this as a suit challenging the commission's decision to allow defendants to rent telephones to their customers. Rather, plaintiffs are challenging the *manner* in which defendants billed them for rental of telephones, specifically, the alleged lack of information given to plaintiffs about the rental charge made each month by defendants. The gist of this suit is the alleged deception, intentional or negligent, resulting in plaintiffs' unknowingly paying rent month after month, year after year for telephones they do not use, or for telephones whose value is less than the

---

[7]The *Waters* court noted that section 2106 does not insulate such policies of the commission from review. Rather, under Public Utilities Code section 1756 et seq., reviewing courts have "jurisdiction to review . . . the lawfulness of any order or decision of the commission in accordance with the procedures set forth in those sections." (*Waters v. Pacific Telephone Co., supra,* 12 Cal.3d at pp. 4-5.)

cumulative rent plaintiffs paid to defendants for them. The gist of the suit is that if plaintiffs had been adequately informed about the nature of the equipment rental charge that they repeatedly paid, they would have chosen to not pay it.

In this respect, the instant case is similar to *Cellular Plus, Inc. v. Superior Court, supra,* 14 Cal.App.4th 1224, where two cellular telephone companies were sued by their customers and others for price-fixing. The plaintiffs alleged the two defendants engaged in wholesale and retail price-fixing of cellular telephone service in that the prices charged by the defendants had remained almost identical for several years because the defendants agreed to that status and had not sought lower rates. The court ruled that section 1759 did not preclude the plaintiffs' suit. It noted that the plaintiffs did not challenge the commission's right to set rates for cellular service, and did not seek to have the commission change its rates, but rather sought damages and injunctive relief, under the Cartwright Act, for the alleged price-fixing. (*Id.* at p. 1245 et seq.)

Also of interest is *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163 [83 Cal.Rptr.2d 548, 973 P.2d 527], which, like the instant case, involved claims of unfair competition violative of section 17200 et seq. of the Business and Professions Code. The defendant was in the business of selling cellular telephones and providing cellular telephone service. The plaintiffs' business was selling cellular telephones; they were not licensed to provide cellular telephone service. The plaintiffs alleged the defendant engaged in unfair competition when it sold cellular telephones below cost and made up for the loss of money on such sales by its increased sales of services. The plaintiffs alleged they were harmed by defendant's marketing strategy because they were not able to fairly compete with defendant's below-cost sales of telephones. The Supreme Court observed that the commission had previously rescinded its prohibition against "bundling," that is, selling cellular equipment and service as a package and discounting the price of the package. The prohibition was lifted even though the commission was aware that such packaging *could* result in cellular equipment dealers being unable to compete if below-cost equipment sales were involved in the bundling, but the commission's order permitting bundling included a directive that state and federal laws respecting below-cost pricing and consumer protection were incorporated into its order. Despite this prior activity by the commission on the subject of bundling, the Supreme Court ruled that permitting the plaintiffs' case to go forward would not infringe on the commission's regulatory authority and responsibilities. (20 Cal.4th at pp. 170-171.) The court noted that the commission itself had two years earlier issued an opinion in which it stated that it is the courts, and

not the commission that " 'ha[ve] jurisdiction to determine violations of antitrust laws.' " (*Id.* at p. 171.) The commission went on to say that " 'while [it] would, of course, review a below-cost allegation brought before [it] in an appropriate proceeding, [it is] certainly not the primary enforcer of below-cost pricing law.' [Citation.]" (*Ibid.*) To that we add our observation that the commission is not the primary enforcer of consumer protection laws in general.

*Cellular Plus, Inc.* and *Cel-Tech Communications, Inc.* support plaintiffs' assertion that section 1759 does not preclude this suit. Additionally, plaintiffs can reasonably argue that the suit actually furthers policies of the commission because it seeks to force defendants to bill their customers in such a way that the customers are fully informed of the nature of defendants' charges. Indeed, the above mentioned consumer advisory notice issued by the commission in February 2000 demonstrates both the commission's desire that consumers be fully informed about charges they may be paying for the rental of their telephones, and the commission's concern that consumers may not be aware they have been paying rental charges which they would not have paid if they knew the facts about such charges.

In *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256 [115 Cal.Rptr.2d 874, 38 P.3d 1098], the court reviewed suits by customers of certain water companies. The suits alleged the companies had, for many years, supplied the customers with water that did not meet the government's water quality standards and the commission's standards for water quality service, resulting in personal injuries to the plaintiffs. The plaintiffs also, in effect, challenged the adequacy of the standards. The court ruled that while the challenge to the standards themselves was barred because it attempted to interfere with a broad regulatory program of the commission, the portion of the suit seeking damages for the defendants' alleged failure to meet water quality standards was not barred by section 1759. (*Hartwell*, at pp. 275-279.) The court observed that any redress of alleged violations that the commission itself might pursue would be "essentially prospective in nature" because the statutory remedies the commission can seek are "designed to stop the utilities from engaging in current and ongoing violations and do not redress injuries for past wrongs." (*Id.* at p. 277.) The court stated that because the commission cannot award damages for past violations, the plaintiffs' causes of action for damages "would not interfere with the [commission] in implementing its supervisory and regulatory policies to prevent future harm." (*Ibid.*)

In the instant case, defendants have not shown that the commission has authority to give plaintiffs the relief that plaintiffs can obtain under section

2106, that is, restitution or damages based on defendants' alleged violations of the aforecited provisions of the Business and Professions Code and the Civil Code, including exemplary damages for willful wrongful acts. Although defendants contend that section 734 of the Public Utilities Code can be applied here to afford such relief, we reject that contention.[8] Section 734 addresses complaints filed with the commission concerning *rates* charged for products and services, and it permits the commission to order a public utility to make reparations to a person who files such a complaint if the commission determines the public utility "has charged an unreasonable, excessive, or discriminatory amount therefore *in violation of any of the provisions of [certain portions of the Public Utilities Act]*." (§ 734, italics added.) Here, plaintiffs are not challenging defendants' rates, only their billing disclosure practices. Moreover, defendants do not explain what violation of the provisions of the Public Utilities Act they are alleged to have committed that would make section 734 applicable.

 Nor have defendants persuaded us that this case is precluded by the commission's having already been presented with administrative claims, by two of defendants' customers, that challenge the very billing practice at issue in the instant case. As noted previously, it does not appear from the record whether one of the claims was even addressed by the commission prior to its dismissal, and while the other claim (filed by Robert Kaveney) was recently decided by the commission, that decision has no impact on this case.[9]

---

[8] Public Utilities Code section 734 states: "When complaint has been made to the commission concerning any rate for any product or commodity furnished or service performed by any public utility, and the commission has found, after investigation, that the public utility has charged an unreasonable, excessive, or discriminatory amount therefore in violation of any of the provisions of this part, the commission may order that the public utility make due reparation to the complainant therefore, with interest from the date of collection if no discrimination will result from such reparation. No order for the payment of reparation upon the ground of unreasonableness shall be made by the commission in any instance wherein the rate in question has, by formal finding, been declared by the commission to be reasonable, and no assignment of a reparation claim shall be recognized by the commission except assignments by operation of law as in cases of death, insanity, bankruptcy, receivership, or order of court."

[9] Robert Kaveney alleged in his administrative complaint that defendants are deceptive in the way they label their telephone rental charge, and therefore he was not aware of the nature of such charges when he paid them. He further alleged that he has provided his own telephone ever since telephone customers were given permission to do so, and he asserted a right to a refund of all telephone rental charges back to that date.

In deciding the complaint, the commission (1) noted Verizon California stated in its defense that it had communicated in writing with its customers to explain their options respecting rental of customer premises equipment, and had done so in "separate mailings, bill inserts, bill messages, brochures and references written in telephone directories," and (2) stated it had "no reason to conclude [Kaveney] did not receive the notices that Verizon California sent to all customers." On the other hand, said the commission, Verizon California

Moreover, even when the commission's investigation of a public utility results in a favorable outcome for the utility, such a determination does not necessarily preclude a suit from going forward against that utility. In *Hartwell Corp. v. Superior Court, supra*, 27 Cal.4th 256, the commission made an investigation of water companies, including the defendant water companies in that suit, after the plaintiffs filed the suit charging personal injuries from unsafe drinking water. Such investigation caused the commission to make a retrospective finding that the water companies had, for the previous 25 years, substantially complied with the drinking water standards of California's State Department of Health Services. Nevertheless, the *Hartwell* court said the finding was not part of an "identifiable 'broad and continuing supervisory or regulatory program of the commission' [citation], related to such routine [commission] proceedings as ratemaking" and rulemaking; nor was the commission's determination part of an enforcement proceeding. (*Id.* at pp. 276-277.) Thus, said the court, although an award by a jury, supported by a finding that the defendants *did* violate governmental water quality standards, would be contrary to the commission's own decision, "it would not hinder or frustrate the [commission's] declared supervisory and regulatory policies, [and u]nder the provisions of section 1759, it would also not constitute a direct review, reversal, correction, or annulment of the decision itself. Accordingly, such a jury verdict would not be barred by the statute." (*Id.* at pp. 277-278.) Additionally, said the court, although a commission finding of past compliance, or noncompliance, might be part of

did not present evidence Kaveney had in his possession, after 1987, a telephone owned by GTE California, nor evidence that Verizon California checked on the existence of the instrument over the years. The commission rejected Kaveney's assertion he should receive a refund of telephone rental fees going back to 1987. The commission said that Public Utilities Code section 736 precludes giving Kaveney more than 36 months of telephone rental charge reparations absent a tolling of that three-year statute of limitations, and in Kaveney's case, the commission had no evidence that he did not receive notice of his telephone equipment options (that is, his right to rent or purchase the telephone from defendants, or obtain a telephone from another source), after the issuance of the commission's August 1985 directive to telephone companies to provide their customers with those three alternatives.

Public Utilities Code section 736 provides that complaints for damages resulting from violations of Public Utilities Code section 494 or 532 must be filed "within three years from the time the cause of action accrues." Sections 494 and 532 prohibit common carriers (§ 494) and public utilities (§ 532) from charging rates that are different from those provided in their tariffs. However, as noted earlier, plaintiffs do not challenge defendants' rates for renting telephones; they challenge the manner in which defendants bill those rates.

In its decision, the commission did not adjudicate the issue whether defendants' failure to fully describe, *in their bills*, the nature of their "equipment rental" charge constitutes deceptive billing and violates the provisions in the Civil Code and Business and Professions Code that are cited by plaintiffs in their complaint as a basis for their suit against defendants. Nor did the commission give an indication that its findings were part of a broad and continuing supervisory or regulatory policy or program (*San Diego Gas & Electric Co. v. Superior Court, supra*, 13 Cal.4th at p. 918; *Hartwell Corp. v. Superior Court, supra*, 27 Cal.4th at pp. 276-277).

a future remedial/regulatory program, such program would not be interfered with by the plaintiffs' suit since the remedies and enforcement options available to the commission do not include awarding damages to persons harmed by water companies that did not comply with drinking water standards.[10] (*Hartwell*, at p. 277.)

Here, defendants have not demonstrated that if the commission were to find that their method of billing for telephone rentals *complied with* the commission's 1985 decision/interim order and opinion for billing such rentals (see fn. 5, *ante*), such a finding would be part of a broad and continuing supervisory or regulatory program related to routine commission proceedings such as ratemaking or rulemaking. In contrast is the case of *Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325 [74 Cal.Rptr.2d 55], which impacted the commission's ratemaking program. The plaintiffs in *Day*, who alleged deceptive advertising in the way the defendants sold prepaid telephone cards to the public, were precluded from stating a cause of action for damages because under the "filed rate doctrine," the plaintiffs were presumed to know the rates the defendants had filed with the Federal Communications Commission, and therefore plaintiffs could not have suffered damages when they paid the filed rates.[11]

We thus conclude that section 1759 does not preclude plaintiffs' case from proceeding under section 2106. This case does not challenge the right of telephone utilities to rent telephones to their customers; nor does it challenge rates. It would not have the effect of reversing, correcting or annulling any decision or order of the commission that we know of, including the commission's 1985 decision/interim opinion and order concerning the rental of telephones, by telephone utilities, to their customers.

---

[10]Thus, the possibility that the commission, at some future time, may enact a remedial program that addresses confusing and not adequately informative billing does not preclude the instant action from going forward. While it is true that the commission has undertaken to formulate rules regarding telephone companies' billing of services that customers authorize (see discussion about defendants' request for judicial notice, *ante*), it does not appear to this court that billing matters such as those that are the focus of this suit are also at issue in the formulation of such rules. Moreover, this suit seeks damages and other relief for past billing; plaintiffs do not seek to have the court dictate the precise format of defendants' future bills; rather, plaintiffs seek a finding that the manner in which defendants billed in the past violated various laws.

[11]Although the plaintiffs in *Day* could not recover damages, the court held the presumption required by the filed rate doctrine did not preclude a cause of action for an injunction to stop the defendants' alleged misleading practices. That is, the defendants were entitled to charge the plaintiffs their filed rates, but the filed rate doctrine did not entitle them to advertise their prepaid telephone cards in such a manner that they violated consumer protection laws (Bus. & Prof. Code, §§ 17200 et seq. and 17500 et seq.). The court said that granting the plaintiffs injunctive relief would not have the effect of permitting them to pay less than the defendants' filed rates, and it would not require the defendants to charge more or less than such rates. (*Day v. AT&T Corp., supra*, 63 Cal.App.4th at pp. 329, 336.)

### III

*The Doctrine of Primary Jurisdiction Does Not Prohibit This Case from Going Forward*

■ The doctrine of primary jurisdiction of regulatory agencies (also known as the doctrines of prior resort and preliminary jurisdiction) is concerned with situations where an issue should be addressed by an administrative agency for its initial determination because there is a need for (1) uniformity of application of administrative regulations and uniformity of answers to administrative questions, and (2) the expert and specialized knowledge of the relevant agency, i.e., the expertise that a regulatory agency can bring to a conflict. (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 386-390 [6 Cal.Rptr.2d 487, 826 P.2d 730].) In *Farmers Ins. Exchange*, the court examined several federal cases that addressed the doctrine. In two cases, the doctrine was found to require redress initially to an agency. One case concerned allegedly unreasonable rates charged by a common carrier for interstate commerce, and the other concerned construction of a railroad tariff that involved an appreciation of intricate matters of transportation. Cases not requiring examination by an agency in the first instance included a suit that addressed the interpretation of a railway tariff where the expertise of a regulatory agency and resolution of disputed facts were not involved, and a suit that involved a plaintiff who was sold a confirmed airline ticket on an overbooked flight, and who alleged fraudulent misrepresentation. (*Ibid.*)

"[T]he primary jurisdiction doctrine advances two related policies: it enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws. [Citations.]" (*Farmers Ins. Exchange v. Superior Court, supra*, 2 Cal.4th at p. 391.) There is no rigid formula for when the doctrine is applied. "Instead, resolution generally hinges on a court's determination of the extent to which the policies . . . are implicated in a given case [Citations.]." (*Ibid.*) Courts will also consider whether applying the doctrine presents an inadequate remedy to litigants, such as whether there would be an unreasonable expense and delay. (*Id.* at pp. 391-392, fn. 9.) "This discretionary approach leaves courts with considerable flexibility to avoid application of the doctrine in appropriate situations, as required by the interests of justice." (*Id.* at pp. 391-392, fn. omitted.)

■ The doctrine of primary jurisdiction is related to the doctrine of exhaustion of administrative remedies in that both involve the question whether an administrative agency should first hear (or rehear) a dispute prior

to it being presented to a court. (*Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th at p. 390.) The exhaustion of administrative remedies doctrine is applied where an administrative agency must be the first body to consider a matter; the doctrine of primary jurisdiction applies where a claim *can* originally be addressed in a court, but would be *better addressed* first by an administrative body. (*Ibid.*) The latter doctrine does not preclude judicial consideration of the case, but rather suspends judicial action pending the administrative agency's views. (*Ibid.; Wise v. Pacific Gas & Electric Co.* (1999) 77 Cal.App.4th 287, 295-296 [91 Cal.Rptr.2d 479].)

■ Applying these parameters of the primary jurisdiction doctrine, we conclude that the trial court abused its discretion when it determined the doctrine should be applied here to require plaintiffs to first seek relief from the commission. The subject of this suit, whether addressed in causes of action based on statutes or on basic common law, is deception—defendants' alleged intentional or negligent misrepresentation about the true nature of their equipment rental charges. This is not a topic about which the commission would have more expertise than the trial court, or even as much expertise. Actions based on alleged deceit are not known to be within the technical expertise of the commission. Nor is there evidence that the commission "has at [its] disposal a 'pervasive and self-contained system of administrative procedure' [citation] to deal with the precise questions involved herein." (*Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th at p. 396.)

Moreover, this case, as it is presented by plaintiffs, does not involve matters that require a uniformity in application of regulatory law. It does not involve, for example, rates, but rather truth in the charging and billing of such rates, and it involves what *these* plaintiffs knew about the "equipment rental" charge they paid.

We are unimpressed with defendants' argument that the commission has initiated proceedings to establish rules for protecting consumer rights. Defendants have reference to the commission's February 2000 "order initiating rulemaking." Defendants have not advised us how this specific activity of the commission relates to plaintiffs' contention that defendants' *prior* billing gives rise to a cause of action. Regulations that are the result of such commission proceedings would only affect future bills. Moreover, even if the commission's activities could affect *plaintiffs' rights* vis-à-vis these decades-old bills, for how long should plaintiffs have to wait until the commission finalizes the activities on its 2000 interim rules?

For all of these reasons, and since it is the courts, and not the commission, that can award damages to plaintiffs, this case should proceed in the trial court.

## IV*

*The Complaint Sufficiently Stated Causes of Action; Therefore, the Demurrer Should Have Been Overruled*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order of dismissal from which plaintiffs have appealed is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. Costs on appeal to plaintiffs.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 15, 2002, and respondents' petition for review by the Supreme Court was denied December 18, 2002. Werdegar, J., and Chin, J., did not participate therein.

---

*See footnote, *ante*, page 1395.