134 Cal.Rptr.2d 701 (2003)
109 Cal.App.4th 381
CITY OF ANAHEIM, Plaintiff and Appellant,
v.
PACIFIC BELL Telephone Company, Defendant and Respondent.
No. G029261.
Court of Appeal, Fourth District, Division Three.
May 30, 2003.
Review Granted August 20, 2003.
*702 Jack L. White, City Attorney, and Moses W. Johnson IV, Deputy City Attorney, for Plaintiff and Appellant.
Pacific Telesis Group Legal Department and David J. Benner, San Diego, for Defendant and Respondent.

OPINION
RYLAARSDAM, J.
Plaintiff City of Anaheim appeals from a judgment entered in favor of defendant Pacific Bell Telephone Company. The court sustained defendant's demurrer to the complaint without leave to amend on the ground it lacked subject matter jurisdiction because exclusive jurisdiction rests with the California Public Utilities Commission (PUC). Plaintiff contends the superior court has concurrent jurisdiction to adjudicate which of the parties must bear the cost of relocating defendant's overhead facilities underground. We disagree with plaintiff and affirm.

FACTS
Pursuant to defendant's tariff rule 32 (Schedule Cal. P.U.C. No. A2, 2.1, 2.1.32 Rule 32 (rule 32)), plaintiff enacted an ordinance requiring all utility companies to move their overhead facilities (e.g., poles, wires, conductors, transformers and the like) underground. Subsequently, after properly noticed public hearings, plaintiff passed a resolution that created an underground district in Peralta Hills. The resolution declared creation of the district "will avoid or eliminate an unusually heavy concentration of overhead electric facilities"; the "district passes through an area of unusual scenic interest to the general public ..."; the right-of-way on which the utilities were then located is "extensively used by the general public and carries a heavy volume of pedestrian or vehicular traffic ..."; and placing utilities underground "will improve safety by removing obstructions to pedestrian and vehicular visibility...." The language of plaintiffs resolution parallels the language in defendant's rule 32 which sets out the circumstances under which defendant must pay the cost of conversion.
Plaintiff notified defendant that, under the resolution, defendant was obligated to move its overhead facilities in the district underground at its sole expense. Defendant agreed to make the conversion but only if it was not required to pay for it. Defendant maintained that the district "[did] not qualify" under rule 32 because it was established for the sole benefit of the residents of the district. It also observed the district was not set up "to avoid or eliminate an unusually heavy concentration of aerial facilities."
Plaintiff decided to pay for the conversion "under protest" so that it would be completed timely, but reserved all rights "to contest responsibility for the cost of construction]...." The parties executed an agreement memorializing these terms.
Plaintiff then filed suit in the superior court. Its first amended complaint sought declaratory relief and monetary damages, pursuant to various Public Utilities Code sections, for the approximately $109,000 it had paid to move the facilities underground. Defendant demurred to the complaint on the ground there was no subject matter jurisdiction because exclusive jurisdiction rested with the PUC.
After the court overruled the demurrer, defendant filed a petition for a writ of *703 mandate (Pacific Bell Telephone Company v. Superior Court, G028460). (We take judicial notice of the briefs and pleadings in that writ proceeding.) We invited plaintiff to file a letter brief, noting, "It appears this issue has already been decided adversely to [plaintiff] in a prior matter," i.e., City of Anaheim v. Southern California Edison Company (Dec. 29, 1997, G016782) [nonpub. opn.]. Subsequently, we issued an alternative writ of mandate ordering the trial court to vacate its order overruling the demurrer "and to issue a new order sustaining the demurrer without leave to amend," or to show cause why we should not issue a peremptory writ. The superior court complied with the alternative writ and sustained the demurrer without leave to amend.

DISCUSSION
The sole question is whether the PUC has exclusive jurisdiction to resolve the dispute about who pays for the relocation of defendant's overhead facilities to underground or whether the superior court has concurrent jurisdiction to decide the issue.
As set out in article XII, section 8 of the California Constitution, "A city ... may not regulate matters over which the Legislature grants regulatory power to the [Public Utilities] Commission." In such matters, the jurisdiction of the PUC is exclusive. (Southern Cal. Gas Co. v. City of Vernon (1995) 41 Cal.App.4th 209, 215, 48 Cal.Rptr.2d 661.) The Legislature has given the PUC broad powers. For example, it is authorized to do everything necessary to exercise its jurisdiction. (Pub. Util.Code, § 701 (all further statutory references are to this code).) Further, it may require utilities to operate so as to promote health and safety, and may set construction and equipment standards. (§ 768.) This exclusivity provides uniformity throughout the State and eliminates conflicting regulations arising out of "... `local judgment and prejudice.' ..." (Los Angeles Ry. Corp. v. Los Angeles (1940) 16 Cal.2d 779, 787, 108 P.2d 430.)
In conformity with this policy, section 1759, subdivision (a) provides that only the Supreme Court and courts of appeal have jurisdiction "to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties...." Superior courts do have limited jurisdiction. A party may bring a civil action in superior court for damages against a utility "that does any act prohibitedor omits to do any act required`by ... any law of this State ...' (§ 2106)." (San Diego Gas & Electric Co. v. Superior Court (1996) 13 Cal.4th 893, 916, 55 Cal. Rptr.2d 724, 920 P.2d 669.) But "section 1759 prevails over section 2106 unless the superior court action *would not interfere with or obstruct the commission in carrying out its own policies.'" (Id. at p. 944, 55 Cal.Rptr.2d 724, 920 P.2d 669.)
The question, then, is whether a decision by the superior court in this case would obstruct or interfere with PUC policy regarding relocation of overhead utility infrastructure underground. (San Diego Gas & Electric Co. v. Superior Court, supra, 13 Cal.4th at pp. 918, 935, 55 Cal. Rptr.2d 724, 920 P.2d 669.) More specifically, which body is authorized to decide whether plaintiffs district satisfies the rule 32 criteria? Under the circumstances here, it is the PUC.
This is a matter over which the PUC has assumed jurisdiction and which it continues to regulate. (Hartwell Corp. v. Superior Court (2002) 27 Cal.4th 256, 275, 115 Cal.Rptr.2d 874, 38 P.3d 1098.) In 2000, it issued an order to implement an assembly *704 bill that required it to conduct a study to improve its rules for conversion. (Cal. P.U.C. Order Instituting Rulemaking Into Implementation of Assembly Bill 1149, Regarding Underground Electric and Communications Facilities (Dec. 11, 2001) Dec. No. 01-12-009 [2001 Cal.P.U.C.Lexis 1067, 3] (Dec. No. 01-12-009).) That decision "revise[d] the rules governing the State's program to convert overhead electric and communications distribution and transmission lines to underground ... [including an] order [for] the creation of an updated Undergrounding [sic] Planning Guide." In addition, the "decision also identifies issues for a Phase 2 proceeding." (Cal. P.U.C. Order Instituting Rulemaking Into Implementation of Assembly Bill 1149 Regarding Underground Electric and Communications Facilities (Mar. 6, 2002) Dec. No. 02-03-026 [2002 Cal.P.U.C.Lexis 137, *2].)
Dec. No. 01-12-009 recounted testimony from public hearings about "the significant demographic and social equity issues that are involved in a city's choice as to what neighborhoods are chosen for ... funding." (Dec. No. 01-12-009, supra, at p. *11.) It further noted conversion funds are limited, creating "the equitable issue of how to balance those who receive the benefits of undergrounding [sic] against those who pay the cost." (Id. at p. *10.) Thus, the PUC will continue to oversee and regulate where and when utility facilities are put underground for the foreseeable future.
The PUC "... `has been held to have paramount jurisdiction in cases where it has exercised its authority, and its authority is pitted against that of a local government involving a matter of statewide concern .... [Citations.]' [Citation.]" (San Diego Gas & Electric Co. v. City of Carlsbad (1998) 64 Cal.App.4th 785, 797, 75 Cal.Rptr.2d 534.) "`... [T]he construction and maintenance of telephone lines within a city ... [has] been declared [a] matter[ ] of statewide concern....' [Citation.]" (Id. at p. 798, 75 Cal.Rptr.2d 534.) The issue here, whether plaintiffs underground district meets the standards set by rule 32, goes to the heart of these concerns.
It is not just a matter of applying or enforcing rule 32, as plaintiff argues. Nor is the issue whether or not plaintiffs suit "challenges" rule 32. Rather, we must decide if "plaintiffs attempt to obtain relief under section 2106 may have the effect of interfering with the commission's regulation of utilities." (Cundiff v. GTE California Inc. (2002) 101 Cal.App.4th 1395, 1405, 125 Cal.Rptr.2d 445.) Under these facts it will.
We do not agree that the PUC has the exclusive jurisdiction to decide every issue arising under rule 32, as defendant maintains. For example, if there was no dispute that a utility was required to pay for relocation of overhead facilities and it failed to do so, the superior court would have jurisdiction to rule on a complaint for payment. (§ 2106; see Vila v. Tahoe Southside Water Utility (1965) 233 Cal. App.2d 469, 477, 43 Cal.Rptr. 654.) Further, defendant overstates the effect of the superior court's potential exercise of jurisdiction when it claims the "result inevitably will be a patchwork of differing standards" throughout the State. (Italics added.) Nevertheless, the issue remains one of statewide concern.
The parties engage in a great debate about whether the payment plaintiff seeks is damages or reparations. But that begs the question. The real issue is who is obligated to pay. The appellation given to the payment has no effect on that determination. Likewise, whether payment is made prior to the work being done or thereafter is an artificial distinction with no legal consequences. Because the PUC *705 has exclusive jurisdiction to decide whether defendant is required to pay for putting the facilities underground, it has the concomitant authority to order defendant to pay plaintiff if plaintiff prevails.
We are not basing our decision here on the ruling in City of Anaheim v. Southern California Edison Company, supra, G016782. Defendant has not provided any authority as to why that case should control, and we treat the issue as waived. (People v. Stanley (1995) 10 Cal.4th 764, 793, 42 Cal.Rptr.2d 543, 897 P.2d 481.)

DISPOSITION
The judgment is affirmed. Respondent is awarded costs on appeal.
WE CONCUR: SILLS, P.J., and MOORE, J.